**STATE of Missouri, Respondent,**

v.

**Norman HARRIS, Appellant.**

**No. 41234.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied Nov. 10, 1981.

James B. Herd, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Nancy D. Kelley Baker, Asst. Attys. Gen., Jefferson City, Charles Bridges, Asst. Pros. Atty., St. Charles, for respondent.

DOWD, Judge.

Defendant was charged under a multiple count indictment with rape, kidnapping and armed criminal action against a seventeen year old female. He was also charged with attempted kidnapping and armed criminal action against the victim's boyfriend. A jury found defendant guilty of all five offenses. Defendant was sentenced to concurrent terms of two years, twenty-five years and three years respectively for the kidnapping, rape and armed criminal action offenses. He was sentenced to concurrent terms of two years and five years respectively for the attempted kidnapping and armed criminal action against the boyfriend, with these sentences to be served consecutively with the previous three sentences. On this appeal the sufficiency of the evidence is not contested and we briefly set forth the relevant facts.

At approximately 12:15 a. m. on December 30, 1977, the victim and her boyfriend were sitting in an automobile parked on a gravel road located in St. Charles County, Missouri. A red 1967 or 1968 Chevrolet pickup drove by. Shortly thereafter someone knocked on the window of the parked automobile and the boyfriend got out to investigate. Defendant was standing beside the automobile holding a flashlight and a shotgun. He subsequently pointed the shotgun at the boyfriend and ordered him into the trunk of the automobile. When the boyfriend said he could not fit in the trunk, defendant told him to start walking down the road.

Defendant then took the victim by the arm and led her to a red pickup where she was made to kneel down on the passenger side of the vehicle facing the passenger door. They drove for ten or fifteen minutes, during which time the victim was blindfolded. They stopped at a house and defendant brought the victim inside the home and raped her. He then returned the victim to the truck, and after driving for ten or fifteen minutes, released her. After walking for approximately fifteen minutes the victim arrived at a truck stop from where she called her parents.

Meanwhile, the victim's boyfriend had already notified police of the abduction. At approximately 1:40 a. m. police stopped a red pickup truck which matched the description of the vehicle being sought in the abduction. Defendant was the driver of this vehicle. The initial description of the abductor apparently specified a man in his twenties and because defendant was much older he was detained briefly and then released. After police authorities had talked with the victim, police officers went to defendant's home and placed him under arrest. At trial, defendant denied any involvement in the crimes charged. He testified that he went out for dinner at approximately midnight and was stopped by police on his way home, and later was arrested. Defendant also elicited reputation evidence from several witnesses.

■ Defendant first contends the trial court erred in giving Instruction No. 17, which was MAI–CR 2.50. This instruction informs the jury, in part, to consider reputation evidence along with all other evidence in determining the guilt or innocence of the defendant. At trial defendant elicited evidence of his good reputation for truth, honesty and good moral character from three witnesses. Thereafter, the prosecuting attorney asked these witnesses whether they had heard of several prior convictions and prior arrests of the defendant. Defendant contends that the trial court erred in giving MAI–CR 2.50 because it "A) wrongfully permitted the jury to infer guilt upon its consideration of appellant's prior unrelated arrests and B) failed to limit the evidence of prior unrelated arrests to the jury's consideration of the evidence of appellant's reputation for good character." Defendant argues that MAI–CR 2.50, in its approved form, does not adequately restrict the jury upon hearing questions pertaining to prior acts of misconduct to the legitimate purpose of testing the trustworthiness, knowledge and good faith of the character witnesses. The instruction informs the jury that character evidence has been introduced and should be considered "along with all of the other evidence in the case in determining the guilt or innocence of the defendant." [1] Defendant argues that the instruction encouraged the jury to consider the prior arrests as "other evidence" and there was nothing contained in the instruction to limit these matters to their proper purpose.

Defendant elicited testimony from three witnesses concerning his reputation for truth, honesty and good moral character. This testimony constituted substantial evidence tending to show defendant's good

1. MAI–CR 2.50 provides as follows:

"Evidence has been introduced concerning the reputation of defendant as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged in this case. This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit the offense charged against the defendant. Therefore, you should consider such evidence along with all of the other evidence in the case in determining the guilt or innocence of the defendant.

If from all of the evidence in the case, including that relating to those traits of defendant's character which would ordinarily be involved in the commission of the offense charged against him, you are not convinced beyond a reasonable doubt that the defendant is guilty, you should acquit him no matter what his character may have been at or before the time the charge was brought. However, if from all of the evidence in the case, including such evidence of defendant's character, you are convinced beyond a reasonable doubt that the defendant is guilty, you should so find even though he may have been a person of good repute."

character, thereby requiring the character instruction. MAI–CR 2.50, Notes on Use, n. 1; *State v. Wells*, 586 S.W.2d 354, 359 (Mo. App.1979); *State v. Woodfin*, 559 S.W.2d 273, 277 (Mo.App.1977). Accordingly, there was no error in giving the instruction.

■ The gist of defendant's contention is that the trial court should have issued an oral or written instruction informing the jury of the permissible uses of the rumor questions and the responses brought out in the cross-examination of the character witnesses. There was no request by defendant at trial for such a limiting instruction. In general, the trial court is not required to give a limiting or cautionary instruction on a collateral matter unless requested to do so. For example, the trial court is not required to instruct on the limited consideration to be given evidence of a defendant's prior conviction absent a request. *State v. Minor*, 548 S.W.2d 598, 601 (Mo.App.1977). In *State v. Wilson*, 248 S.W.2d 857 (Mo. 1952) the defendant contended that the trial court should have instructed the jury that the statements by character witnesses that the defendant had been arrested were for the purpose of attacking their credibility and not for proving the arrest and were not to be used as evidence against the defendant. The court concluded that this was a collateral matter, and since the defendant had not requested such an instruction, the trial court was not required to give one. *Id.* at 860. *See also State v. McCoy*, 458 S.W.2d 356, 359–360 (Mo.1970); *State v. Bellew*, 612 S.W.2d 401, 403 (Mo.App.1981). In the present case, the trial court did not err in failing to *sua sponte* instruct the jury concerning the cross-examination of the character witnesses.

In the argument portion of his brief, defendant also asserts that the prosecutor improperly cross-examined the defendant's character witnesses. Defendant argues that the prosecutor's cross-examination questions, concerning several prior arrests of the defendant, assumed as fact matters which were not in evidence and repeatedly subjected him to improper inferences from the unestablished assumption of prior misconduct.

■ "[T]he state may cross-examine a character witness with reference to defendant's prior arrests and accusations of specific misconduct for the purpose of testing the trustworthiness, knowledge and good faith of the witness." *State v. Siems*, 535 S.W.2d 261, 264 (Mo.App.1976). Such inquiry of a witness to defendant's good reputation is permitted because it tends to show either that the witness is unfamiliar with defendant's reputation, or he is being untruthful or that he has an unsound standard of what constitutes good reputation. *State v. Burr*, 542 S.W.2d 527, 532 (Mo.App.1976). Thus, the state is allowed to ask in good faith if the character witness had heard rumors regarding misconduct of the defendant on the ground that if the witness admitted knowing of the rumors, such knowledge may be treated as inconsistent with previous assertions that the defendant's reputation is good. *State v. Siems, supra; State v. Carson*, 239 S.W.2d 532, 536 (Mo.App.1951).

■ While such cross-examination of character witnesses is permitted, it "ought to be done in good faith, and the crimes inquired about ought not to be apocryphal, existing alone in the fertile fancy of a public prosecutor." *State v. Hastings*, 477 S.W.2d 108, 113 (Mo.1972) quoting *State v. Willard*, 192 S.W. 437, 440 (Mo.1917). The questions should not assume facts or be asked merely for the purpose of improperly showing other crimes to the jury. *State v. Carroll*, 188 S.W.2d 22, 24 (Mo.App.1945). *See State v. Thomas*, 535 S.W.2d 138 (Mo. App.1976). In the present case, the prosecutor asked the character witnesses whether they had heard of five prior arrests of the defendant for various charges. One witness had heard of two of the prior arrests. The prosecutor also asked the witnesses whether they had heard of defendant's prior convictions. One witness had heard of these prior convictions and defendant admitted them when he took the stand on his own behalf. No claim of bad faith is made by defendant concerning the prosecu-

tor's questions and the record reveals none.[2] On the record before us there is nothing to indicate that the prosecutor's purpose was anything other than to test the good faith of the witnesses and their knowledge of defendant's reputation. We do not find that the trial court abused its discretion in permitting such questioning. This point is ruled against defendant.

■ Defendant next contends the trial court erred in giving Instruction No. 16, which was MAI–CR 3.54. This instruction informs the jury that if a defendant made prior statements consistent with his testimony at trial the jury may consider that in determining the believability of the defendant and the weight to be given his testimony, but the prior consistent statements must not be considered as evidence of the matters contained in the statements. In the present case, the police officers who arrested defendant testified concerning certain statements he made relating to his activities on December 30, 1977, and defendant made similar statements at trial. The prior statements were admitted without objection or a request for a limiting instruction. Defendant notes that MAI–CR 3.54 should not be given when prior consistent statements enter a case without limitation by either party. MAI–CR 3.52, Notes on Use, n. 2. The record indicates, however, that the instruction was requested by defendant. The defendant cannot now complain of an instruction given at his instance. Section 545.030, subd. 1(16) RSMo 1969; *State v. Davis*, 608 S.W.2d 437, 441 (Mo.App.1980); *State v. Medley*, 588 S.W.2d 55, 60 (Mo.App.1979). *See State v. Euell*, 583 S.W.2d 173, 178 (Mo. banc 1979).

Defendant next asserts that the trial court erred in failing to grant a mistrial following a response given by a police officer to a question asked by the prosecuting attorney. During the direct examination of Officer Rothrock, the following exchange occurred:

"Q. Approximately how long did you detain this individual [the defendant] at that time?

A. About 10 minutes.

Q. After you released him what occurred then?

A. I stayed in the area. About 5, 6, maybe 7 minutes later, the female that was abducted was found, and *I was advised that the subject we had released was probably the one we wanted.*" (Emphasis added.)

The trial court sustained defendant's objection to the police officer's answer and instructed the jury to disregard it, but denied the request for a mistrial. Defendant argues that this answer was unresponsive and inflammatory, implied defendant's guilt and indicated to the jury that the law enforcement community believed defendant's guilt had been established.

■ The declaration of a mistrial is a drastic remedy and should be exercised only in those circumstances in which no action short of a mistrial would remove the prejudice claimed. The declaration of a mistrial rests in the sound discretion of the trial court and the purpose of our review is to determine whether the trial court abused its discretion in refusing to declare a mistrial. *State v. Brown*, 554 S.W.2d 574, 579 (Mo.App.1977); *State v. Walker*, 531 S.W.2d 55, 57 (Mo.App.1975). In the present case, defendant's objection to the police officer's unresponsive answer was sustained and the trial court promptly instructed the jury to disregard the comment. The statement was not referred to again during trial or in closing argument. There was other substantial evidence identifying defendant as

---

**2.** *Cf. State v. Myers*, 579 S.W.2d 828 (Mo.App. 1979), in which the state sought and failed to establish a factual basis for its earlier inquiry of character witnesses concerning whether they had heard defendant had beaten his wife and as a result she had been hospitalized. The record established at trial showed there was a basis for the inquiry that the defendant had beaten his wife, but there was no basis established for the inquiry that the wife had required hospitalization. At the motion for new trial, the defendant asserted that there was no evidence of an assault causing the wife's hospitalization. On appeal this was found to be reversible error, with the court noting that this question was particularly damaging in light of the fact that defendant had been charged with assaulting a woman.

the actor in the crimes charged. We find no abuse of discretion in the refusal to declare a mistrial under these circumstances. *See State v. Ivory,* 609 S.W.2d 217, 222 (Mo.App.1980); *State v. Brown,* 554 S.W.2d 574, 578–579 (Mo.App.1977); *State v. Harris,* 535 S.W.2d 145, 149 (Mo.App.1976).

■■■■ Defendant's next contention is that certain questions asked by the prosecutor during cross-examination of the defendant and certain comments by the prosecutor in closing argument prejudiced defendant's right to a fair trial. Defendant cites six questions which allegedly were improper. As to four of the questions, there was no objection or other relief requested. When no objection is made to questions asked on cross-examination, nothing is preserved for appellate review. *State v. Seemiller,* 558 S.W.2d 212, 214 (Mo.App.1977); *State v. Ray,* 554 S.W.2d 596, 598 (Mo.App.1977). Regarding the two remaining challenged questions, the record indicates that defendant's objections to these questions were sustained and no further relief was requested. Accordingly, the trial court granted all the relief requested and there is nothing preserved for appellate review. *State v. Seemiller, supra; State v. Platt,* 525 S.W.2d 637, 641 (Mo.App.1975).

Defendant also contends that portions of the prosecutor's closing argument were prejudicial. The first challenged statement occurred when the prosecutor referred to a question he had asked defendant on cross-examination concerning whether defendant had seen a person who looked and dressed like defendant before being stopped by the police on December 30, 1977. The prosecutor noted that defendant had answered this question in the negative and the prosecutor then said of course defendant had not seen such a person. The second challenged

statement occurred when the prosecutor argued to the jury that defendant was the one witness with a motive to lie because he was facing penitentiary time. The prosecutor then told the jury: "Norman Harris told you, 'All these people are lying; I'm telling you the truth.'" [3]

■■■■ The prosecutor has a right to comment in closing argument on the credibility of defendant's witnesses and the truth or falsity of their testimony. Whether the prosecutor has exceeded the leeway granted him in such comment is a matter peculiarly within the sound discretion of the trial court. *State v. Murphy,* 592 S.W.2d 727, 733 (Mo. banc 1979). When a defendant testifies on his own behalf his testimony is subject to the same arguments on the issue of credibility as is any other witness. *State v. Henderson,* 530 S.W.2d 382, 384 (Mo.App.1975). The challenged comments concerning whether defendant saw a similar looking man on the night of these crimes was an effort at challenging the credibility of defendant's testimony in light of the other evidence presented. The evidence showed that the abductor had driven a red pickup. Defendant was driving in the vicinity of the abduction. He was stopped by police at approximately 1:40 a. m. within a short distance from where Ms. Duenow had been released and he was driving a red pickup. We find nothing improper about the prosecutor's comments.

■■■■ Defendant argues that the prosecutor's statement that "Norman Harris told you, 'All these people are lying; I'm telling you the truth.'" totally distorted defendant's actual testimony. While it is true that defendant never made such a statement, in reviewing the prosecutor's

---

3. The prosecutor stated the following:

"... I think it comes down to one major issue. Who's telling the truth? Are [the boyfriend] and [the victim] lying about this? Do they have any motive to lie? Or is Harris lying? He has a big motive to lie. He has penitentiary time laying over his head. Who's got a motive to lie? Do you think [the victim] lied when she positively identified his truck? Do you think she lied when she said

he was the man who did it? She identified his voice. Do you think she lied about all these things? Do you think [the boyfriend] lied when he positively identified his truck? Do you think he lied when he identified his voice? Do you think Trooper Rothrock lied when he said he stopped him at 1:40 a. m.? Norman Harris told you, "All these people are lying; I'm telling you the truth."

comments in the context of the closing argument it appeared that he was attempting to summarize the conflicting testimony presented at trial. The trial court has wide discretion in controlling argument and its rulings will be reversed only for abuse of discretion where the argument is plainly unwarranted and clearly injurious. *State v. Neal*, 591 S.W.2d 178, 183 (Mo.App.1979). The trial court did not abuse its discretion in refusing to declare a mistrial.

■ Defendant's final contention is that his conviction for two counts of armed criminal action violated the double jeopardy clause of the Fifth Amendment to the United States Constitution. Defendant was charged and convicted of kidnapping the victim. He was also charged and convicted of attempted kidnapping of the boyfriend. Because defendant used a gun in committing both these offenses he was also charged, and subsequently convicted, of two counts of armed criminal action in violation of § 559.225 RSMo Supp.1976.

The Missouri Supreme Court has held that convictions for first degree robbery and armed criminal action, arising out of the same transaction, placed an accused in double jeopardy in violation of his federal constitutional rights. *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980) (hereinafter *Sours I*). The United States Supreme Court thereafter vacated *Sours I* and remanded the case in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980). After reconsideration in light of *Whalen*, the Missouri Supreme Court concluded that their original opinion and judgment in *Sours I* was correct, and it was reinstated as supplemented. *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980) *cert. denied* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981) (hereinafter *Sours II*). In *State v. Haggard*, 619 S.W.2d 44 (Mo. banc 1981) the Missouri Supreme Court has recently

affirmed its prior position, as expressed in *Sours II*, and held that convictions for first degree robbery and armed criminal action, arising out of the same transaction, violated the Fifth Amendment to the United States Constitution.[4]

The aforesaid Missouri Supreme Court decisions involved convictions for armed criminal action and first degree robbery. The present case involves two armed criminal action convictions in conjunction with felony convictions for kidnapping and attempted kidnapping. In analyzing the crime of armed criminal action in *Sours I*, the court stated:

> "The crime of armed criminal action consists of two features: (1) any felony, and (2) the use of a dangerous and deadly weapon in the commission of (1). The first feature may be any one of a class of offenses, each of which consists in turn of several elements. If (1) specified a single felony, it would be obvious that armed criminal action includes all of the elements of the felony specified.... Proof of armed criminal action still 'cannot be had without' proof of the underlying offense. *Harris* stands for the proposition that when a statute defines a crime as 'any felony' plus other elements, proof of the particular felony involved is required to prove that crime.... Thus, ... armed criminal action and the underlying felony constitutes only one offense and not two." *Sours I, supra* at 219–220.

Applying this analysis to the instant case, to convict defendant of both counts of armed criminal action, it was incumbent upon the state to prove all the elements of the respective kidnapping and attempted kidnapping offenses. Proof of kidnapping or attempted kidnapping does not require proof of any fact not also required to prove armed criminal action.

In *State v. Greer*, 609 S.W.2d 423 (Mo. App.1980) the defendant was charged, in

---

4. In *Haggard*, the Missouri Supreme Court reexamined the double jeopardy issue after the United States Supreme Court had granted certiorari on several Missouri appellate court decisions which had been based upon the authority of *Sours II*. These cases were remanded by the United States Supreme Court for further consideration in light of *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

part, with two counts of kidnapping and two counts of armed criminal action. In reversing the armed criminal action convictions, the court in *Greer* concluded that the prohibition mandated in *Sours I* and *Sours II* applies to all underlying felonies and is not limited to the felony of first degree robbery. *Greer* was one of the several cases ordered reexamined by the United States Supreme Court in light of *Albernaz*. The Missouri Supreme Court recently reexamined *Greer*, and has approved and affirmed the decision. *State v. Greer*, 619 S.W.2d 62 (Mo. banc 1981). For the foregoing reasons, we are constrained to reverse both of defendant's convictions for armed criminal action.

The convictions for rape, kidnapping and attempted kidnapping are affirmed. The two armed criminal action convictions are reversed.

STEPHAN, P. J., and STEWART, J., concur.