STATE of Missouri,
Plaintiff-Respondent,

v.

Tommie C. DENTMAN,
Defendant-Appellant.

No. 42644.

Missouri Court of Appeals,
Eastern District,
Division One.

April 6, 1982.

Michael M. Frank, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, John M. Morris, III, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant Tommie C. Dentman was convicted of the class D felony of tampering with a witness in a felony prosecution, § 575.270, RSMo 1978, and sentenced to imprisonment for a term of five years. He appeals; we affirm.

The sufficiency of the evidence is not challenged, and we therefore make only a brief statement of the facts supporting the conviction. Other facts will be alluded to as necessary in the discussion of the points on appeal.

By its verdict, the jury found that defendant offered money to Richard Ford to induce him to absent himself from a capital murder trial. Ford had witnessed the killing of Jerome Brown by Dennis Haymon, while Brown was a passenger in an automobile driven by Ford.[1] Ford identified Haymon as the assailant and was endorsed as a witness for the state on Haymon's indictment. Some time after the endorsement, Ford was accosted by Haymon and another and received two bullet wounds in the chest and one in his wrist. Ford was hospitalized for thirteen days following that incident, during which time he had twenty-four hour police protection. One of the police officers assigned to protect Ford was defendant Dentman who guarded him during the January 17, 1979 daytime shift. The two discussed Ford's wounds, and defendant told Ford "some people that Dennis Haymon didn't know anything about" did not want Ford to testify against Haymon and would pay Ford $1,000 to $5,000 to refuse to testify. Ford countered that he would not testify if he were given $10,000 and a new Cadillac "so I can leave." Defendant expressed doubt that he could get the Cadillac, but defendant said he would "try for the ten." In accordance with his promise, defendant returned the next day for a brief visit, assured Ford he was trying to get the $10,000 and admonished Ford to "be cool." Upon his release from the hospital, Ford reported defendant's offer to the Circuit Attorney's office and was immediately sent with his mother to California where he remained until May 17, 1979 when he returned to testify at Haymon's trial. Ford stayed at a St. Louis hotel. At the request of the Circuit Attorney's office, Ford contacted defendant by leaving a message at the Sixth District police station. The call was promptly returned and defendant told Ford that the offer was still open. Ford suggested that he would accept $1,000 to $3,000, but defendant said he would "stick with the five" ($5,000).

Several other telephone calls were initiated by defendant, or by Ford at defendant's direction, the last being on May 19, 1979 from defendant to advise Ford that defendant had the money and would pick him up in a red Cadillac to take him to Chicago. Within an hour, defendant arrived at the hotel. When defendant was approached by a police officer who had been guarding Ford, defendant ran from the lobby and

---

1. *State v. Haymon,* 616 S.W.2d 805 (Mo.banc 1981).

fled in a red Cadillac in spite of another officer's efforts to stop the vehicle. Defendant surrendered two days later.

Defendant's first contention is that the trial court erred in denying his motion to dismiss the indictment because trial did not begin within 180 days of the arraignment in violation of § 545.780, RSMo 1978.

Defendant argues that § 545.780, paragraph 2, mandates the commencement of trial within 180 days of arraignment. Defendant further argues that delays in the commencement of trial which are caused by continuances are excludable from the 180 day period only if the court states for the record "its reasons for finding that the ends of justice [will be] served by the granting of such continuance."

Defendant was arraigned on June 19, 1979, and went to trial on January 7, 1980, an interval of 202 days. During that period defendant requested a continuance of a July 23, 1979 setting which the court granted by the following order dated July 19, 1979:

"Cause continued at the request of the Defendant to 9–10–79 for the reason(s) that: the State has yesterday provided the defense with all the police reports in the case."

"WHEREFORE, the Court finds, for the above stated reason(s), that the ends of justice are served by granting the continuance and outweigh the best interests of the public and the defendant in a speedy trial."

The period of forty-nine days attributable to this continuance must be excluded from defendant's computation of 202 days. The order granting the continuance, which was signed by defendant's present counsel but not included in the record by him,[2] clearly shows that the continuance was granted because discovery had only recently been provided to defendant and the ends of justice would be served by granting it. Defendant argues: (1) that he should not be held responsible for the delay occasioned by

his own request because the state had been dilatory up to that point in responding to his various discovery motions; and (2) that the preparation of his defense had been hampered by the state's bad faith in this regard. We are provided with no specific examples of how the defendant was thus prejudiced by the state's tactics or, indeed, what those tactics were. There is only the general charge of "delay." The record reveals no reason for not charging the forty-nine day continuance to the defendant, and the trial was therefore held well within the 180 day limit. Defendant's point is without merit.

Defendant next contends the trial court erred in admitting the testimony of state's witness Richard Ford because the state failed to disclose "material information" requested in defendant's discovery motions. The point relied on does not indicate the nature of this material information or even if the information pertained to witness Ford, and thus violates Rule 84.04(d). The argument portion of defendant's brief enumerates five items which he claims were not disclosed to him until after trial had begun. Although the defective point is not cured by inclusion of the missing elements in the argument, we will address defendant's point. See *Thummel v. King*, 570 S.W.2d 679, 686 (Mo.banc 1978). Defendant alleges that the state failed to disclose: (1) that Ford was arrested in California in October, 1979; (2) that Ford subsequently pled guilty in California to one traffic violation and to one charge of stealing under $50 which had been pending since 1975; (3) that Ford had a felony charge (possession of marijuana) pending against him in the City of St. Louis; (4) that an assistant circuit attorney knew of the California and St. Louis charges; and (5) that the marijuana charge was nolle prossed in June, 1980.

Assuming that each of the items was properly described in one or more of defendant's pre-trial discovery motions, a

---

**2.** The state sought and was granted an order by this court supplementing the record with a

copy of the trial court's order set out here.

thorough examination of the trial transcript fails to reveal how any prejudice to his defense could conceivably have resulted. Each fact was made known to defense counsel at or before the trial and each was thoroughly explored in the presence of the jury.[3] Moreover, the state elicited from witness Ford that he had also been convicted of an earlier stealing charge and of three counts of illegal possession of narcotics for which he served time and was later reincarcerated for a parole violation.

∎ Several of the items which defendant now enumerates would have been of questionable admissibility regardless of when revealed to defendant, e.g., arrests, traffic violations, the mere pendency of charges against him.[4] With respect to the last item, it is true that a pending charge against a witness may be shown where it can give rise to an inference that it might motivate a witness to testify favorably to the state in exchange for leniency. *State v. Lockhart*, 507 S.W.2d 395, 396[3] (Mo.1974). As mentioned, however, the charge against witness Ford had been nolle prossed some seven months prior to the time he testified and obviously did not loom in his mind as a threat to his freedom at the time of trial. Moreover, the prosecutor elected to clear the air by asking whether Ford had been promised anything for testifying, to which question he received a negative response. Finally, even in that setting, the defense was not foreclosed from arguing to the jury that when Ford started to testify he did not realize that the charge had been dismissed, as there was evidence to support this, or from arguing that Ford's testimony was affected by a fear that the charge would be re-filed.

∎∎ Prosecutors are not to be encouraged by this opinion to respond to disclosure requests contemplated by Rule 25 with anything less than diligence, good faith, and complete candor. The salutary purposes of the Rule demand nothing less. Upon review, the issue before us is whether the trial court abused its discretion in failing to exclude Ford's testimony in view of the state's failure to respond promptly and fully to the defendant's disclosure requests. "The ultimate question being: whether or not the failure to produce has resulted in fundamental unfairness or prejudice to the defendant." *State v. Gormon*, 584 S.W.2d 420, 423 (Mo.App.1979). See also *State v. Bizzle*, 608 S.W.2d 111, 113 (Mo.App.1980). For the reasons discussed, we find no abuse of discretion here and rule the point against defendant.

Defendant's final contention is that the trial court erred in refusing to submit defendant's tendered converse Instruction No. B.[5] Defendant argues that he was deprived of the submission of his defense, that is, lack of criminal intent or, as defendant phrases it, lack of "requisite purpose." Defendant also asserts that the theory of his defense was that he believed his conduct was within his authority as a public official so that his conduct was not illegal.

Section 575.270, RSMo 1978, states that a "person commits the crime of tampering with a witness if, *with purpose to induce a witness . . . to absent himself or avoid subpoena or other legal process, or to withhold evidence*" he offers a benefit to the witness. (Emphasis added.) The verdict director

---

3. Defendant's claim that the marijuana charge was nolle prossed in June 1980 is patently incorrect. References to it in the trial transcript indicate that it had been dismissed prior to the trial, i.e., June of 1979 or before.

4. A witness may not be impeached by asking him about past arrests. *State v. Massa*, 512 S.W.2d 912, 914 (Mo.App.1974). Similarly, if a conviction of a traffic offense is merely for a municipal ordinance violation, rather than for a state misdemeanor, it may not be shown for impeachment purposes. *State v. Brewer*, 549 S.W.2d 642, 644 (Mo.App.1977). And the

pendency of a charge, with nothing more, cannot be used to attack the credibility of a witness. *State v. Lockhart*, 507 S.W.2d 395, 396 (Mo.1974).

5. Defendant's point relied on with regard to this issue also violates Rule 84.04(d). It fails to specify in what way the refusal of this instruction was erroneous. *Thummel v. King*, 570 S.W.2d 679, 685[5] (Mo.banc 1978). In addition, the argument portion of the brief fails to set forth in full the refused instruction in violation of Rule 84.04(e).

here submitted that defendant offered money to witness Ford with the "purpose to influence Richard Ford to absent himself and withhold evidence." MAI–CR 2d 29.86 (modified by MAI–CR 2d 2.04 to instruct on the special negative defense of entrapment).

The court submitted MAI–CR 2d 3.02, a pure negative converse which was unrelated to the special negative defense of entrapment but which was directed to the element of intent.

"If you do not find and believe from the evidence beyond a reasonable doubt that defendant offered or agreed to confer benefit upon a witness in a felony prosecution with the purpose to induce said witness to absent himself or avoid testifying in said trial, you must find the defendant not guilty of tampering with a witness."

Defendant's refused Instruction No. B was patterned on MAI–CR 2d 2.38.

"One of the issues in this case is whether the defendant acted under a reasonable belief that his conduct did not constitute an offense. On that issue you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant is not entitled to an acquittal on the grounds of reasonable belief that the conduct was not illegal. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant is entitled to an acquittal on the grounds of reasonable belief that the conduct was not illegal, then you must find the defendant not guilty of the charge of tampering with a witness.

2. If the defendant reasonably believed the conduct submitted in Instruction No. _____ was not criminal, that he was acting within the full authority of his duties as a public official by conducting independent investigations to discover other crimes and perpetrators beyond those charged and pending, and that the purpose of his conduct was to determine the character and credibility of said witness, and that his conscious object was not to carry out the agreement but rather to use it as a means of achieving the purpose that Defendant reasonably believed was legitimately within the scope of his official duties, then the defendant acted in reasonable belief that the conduct was not illegal and must be acquitted."

The Notes on Use following MAI–CR 2d 2.38 caution that this instruction covers a very limited range of situations and does not submit the negative of any mental state. The instruction is based on § 562.-031.2, RSMo 1978,[6] and, as the Notes on Use mention, relates to exceptional situations "where the definition of the offense has not been made public, or where the defendant reasonably relied upon a declaration made by an official agency of the state...." Neither of these exceptional situations exists here.

Defendant testified that he did not act with the purpose of inducing Ford to absent

---

**6.** "Section 562.031. Ignorance and mistake.— 1. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact or law unless such mistake negatives the existence of the mental state required by the offense.

2. A person is not relieved of criminal liability for conduct because he believes his conduct does not constitute an offense unless his belief is reasonable and

(1) The offense is defined by an administrative regulation or order which is not known to him and has not been published or otherwise made reasonably available to him, and he could not have acquired such knowledge by the exercise of due diligence pursuant to facts known to him; or

(2) He acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in

(a) A statute;

(b) An opinion or order of an appellate court;

(c) An official interpretation of the statute, regulation or order defining the offense made by a public official or agency legally authorized to interpret such statute, regulation or order.

3. The burden of injecting the issue of reasonable belief that conduct does not constitute an offense under subdivisions (1) and (2) of subsection 2 is on the defendant."

himself but, rather, with the intention of gaining Ford's confidence so that Ford would become a source of information which would assist defendant as a police officer in solving other crimes and making other arrests. Put another way, defendant's theory of defense is simply that he did not have the criminal intent required by § 575.270, RSMo 1978, because he believed he was acting within his authority as a police officer. Thus, defendant's position is that he did not have the requisite criminal intent to commit the offense.

■ Under this analysis, it is clear that defendant's Instruction No. B patterned on MAI–CR 2d 2.38 was properly refused. Defendant was entitled to a converse instruction that negated the element of intent required in § 575.270, RSMo 1978, i.e. "purpose to induce" absence of the witness. Instruction No. 6 submitted by the court was the proper converse instruction. We rule this point against defendant.

Judgment is affirmed.

DOWD and STEWART, JJ., concur.

