**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles R. HURT, Defendant-Appellant.**

No. 13156.

Missouri Court of Appeals, Southern District, Division Two.

March 12, 1984.

Motion for Rehearing or to Transfer Denied April 4, 1984.

Application to Transfer Denied May 15, 1984.

Margaret Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., David C. Mason, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Presiding Judge.

On July 18, 1981, inmate Frank Hood was found stabbed to death in his cell in the Missouri State Penitentiary. He and the defendant had been cellmates for approximately two weeks. The defendant was charged with the capital murder of Hood under § 565.001. In a bifurcated trial a jury first found him guilty of capital murder and then fixed his punishment at life imprisonment without eligibility for probation or parole for 50 years. He was sentenced accordingly. A brief summary of the basic facts will provide a sufficient background for consideration of the points presented.

A guard saw Hood alive in his cell at approximately 5:50 p.m. This was during a period in which the cells were locked. The cells were opened for "evening yard" approximately 20 minutes later. During the interval no one entered the cell. When the cell was opened, the defendant immediately left. Within seconds the body of Hood was discovered in the cell covered with bed clothing.

The defendant was found in the yard. About 6:30 p.m. he was taken to the control center where he was interrogated. He first gave two different oral statements of events absolving himself of complicity in the homicide. A third statement was reduced to writing. In that statement he confessed to stabbing Hood. But, he justified the homicide as a defense against Hood's attack with a hammer to subject the defendant to sodomy. He testified the evening before, by use of the hammer, Hood forced him to submit to sodomy. Hood bragged he was going to make him his "punk." He got a knife to protect himself. The stabbing occurred during a struggle started when Hood again attacked him with the hammer. He called as a witness a fellow inmate who purported to see from the shower the struggle with Hood wielding the hammer. This testimony was discredited by evidence of prison procedure. The defendant bore no marks attributable to the hammer. Hood was 5 feet 5 inches tall. He weighed 150 pounds and was described as a quiet individual. He had 64 stab wounds, some as deep as four or five inches. Sixteen wounds penetrated the left lung, five the heart, and one into the liver. Each of twenty-six or twenty-seven wounds could have proved fatal.

■ The defendant's first point asserts the unconstitutionality of §§ 565.001, 565.006.2, 565.008.1 and 565.012 "because said sections, in particular Section 565.008, violate the United States and Missouri Constitutions because the penalty authorized by that section constitutes cruel and unusual punishment without consideration for individualization of sentences, and also violates the defendant's due process and equal protection rights." The last clause of that point is an abstract statement and presents nothing for review. *State v. Tatum*, 653 S.W.2d 241 (Mo.App.1983). However, the point will be considered as attacking the constitutionality of those sections because his sentence of life imprisonment without eligibility for probation or parole for fifty years violates the Eighth Amendment of the Federal Constitution and Art. I, § 21 of the Constitution of Missouri.

■ Even though not questioned by the parties, this point requires consideration of

the jurisdiction of this court. *State v. Charity*, 637 S.W.2d 319 (Mo.App.1982). Art. V, § 3 of the Constitution of Missouri in part provides, "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of a . . . statute . . . of this state . . . ." However, this court is not deprived of jurisdiction unless the constitutional question is real and substantial and not merely colorable. *Caesar's Health Club v. St. Louis County*, 565 S.W.2d 783 (Mo.App.1978), cert. denied 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d 760 (Mo.App. 1974). A real and substantial question is not raised when the Supreme Court has once determined that question. *City of St. Louis v. Gavin*, 222 S.W.2d 531 (Mo.App. 1949).

■ The Supreme Court has repeatedly determined that life imprisonment without eligibility for probation or parole for 50 years is not cruel or unusual punishment for capital murder. *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981), cert. denied 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982); *State v. Borden*, 605 S.W.2d 88 (Mo. banc 1980); *State v. Olinghouse*, 605 S.W.2d 58 (Mo. banc 1980). This court is aware of *Solem v. Helm*, —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In that case the United States Supreme Court held that such a life sentence was disproportionate punishment for a recidivist who had committed seven non-violent felonies, not against a person, to which alcohol was a contributing factor. But, the United States Supreme Court has repeatedly held that death, as an alternative to life imprisonment, is not per se a cruel and unusual punishment for capital murder. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *State v. Trimble*, 638 S.W.2d 726 (Mo. banc 1982), cert. denied 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Mercer*, 618 S.W.2d 1 (Mo. banc 1981), cert. denied 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). It has been declared that mandatory life sentences

"serve the legitimate legislative purpose of assuring that violent offenders do not return to society prematurely." *State v. Higgins*, 592 S.W.2d 151, 156 (Mo. banc 1979). *Solem v. Helm*, supra, does not lessen the binding authority of the determinations in *State v. Turner*, supra; *State v. Borden*, supra; *State v. Olinghouse*, supra. The defendant has recognized this as he does not actually raise the constitutional question of disproportionate punishment. The point he has raised has been treated in a previous case. He "does not suggest a mandatory life sentence for the crime of capital murder is invariably excessive; rather, the Eighth Amendment requires individualized consideration of each offender and each crime." *State v. Borden*, supra, at 92. The Supreme Court of Missouri, citing *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), held that neither constitution invalidates a legislative determination that such individualized consideration is not required in capital murder cases where the death penalty is not imposed. *State v. Borden*, supra. The defendant's stated point presents no real constitutional question.

Further, the random arguments of the defendant, under, but beyond the scope of his first point as stated, need not be considered. *State v. Dentman*, 635 S.W.2d 28 (Mo.App.1982). However, it is appropriate to observe that they too present no real constitutional question. His argument the sentence is disproportionate to the crime of capital murder has been repeatedly determined adversely. *State v. Turner*, supra; *State v. Borden*, supra; *State v. Olinghouse*, supra. His argument based upon the asserted discretion vested in the prosecuting attorney and the court or jury has likewise been adversely determined. *State v. Trimble*, supra; *State v. Thomas*, 625 S.W.2d 115 (Mo.1981). His complaints about the vagueness of § 565.012.2 and the limitations of § 565.012.3 are without merit. He is not in a position to complain about the facts to be considered in the imposition of the death penalty. *State v. Thomas*, supra. Further, those conten-

tions have also been adversely determined. *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982); *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), cert. denied 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). The defendant has raised no real constitutional question and this court has jurisdiction. *State v. Charity,* supra. Upon the basis of the authorities cited, his first point is denied.

■ The defendant next contends he was denied a trial within 180 days of his arraignment as required by § 545.780. The defendant concedes there were 290 days between his arraignment and trial. He was arraigned on July 31, 1981. His case was then set for trial on November 23, 1981. On October 13, 1981, his motion for a mental examination was sustained and the case reset for the next available day, January 25, 1982. The defendant contends the interval should not be excluded because the report of the mental examination was filed on October 29, 1981, and the examination would not have interfered with the original trial setting. At the time of resetting, the trial court was justified in believing the mental examination and developments from the examination would not permit a trial on November 23, 1981. The trial court was entitled to maintain its docket in such a manner that insured the utilization of all its time. The interval of delay did result from a mental examination of the defendant and is excluded § 545.780.-3(1)(a).

Before January 25, 1982, the defendant was granted two changes of venue. The case was last sent to Greene County where it was promptly set for the first available day, March 8, 1982. This additional delay resulted from those changes of venue and is excluded. § 545.780.3(1)(d).

Then on the state's application the case was continued to April 5, 1982. The trial court found such action served the ends of justice and gave the reason therefore as required by § 545.780.3(5)(a). The reason was a prior trial commitment in a civil case of the assistant prosecuting attorney. It must be noted the application was made as soon as it was determined the civil case would actually be tried and involved a witness coming from Africa. The defendant insists that reason is invalid as the assistant prosecuting attorney is required to give priority to criminal matters. That position in Cole County is a part-time job. The salary is such that at least part of the motivation to perform that duty is an abiding interest in the system of justice. To demand that in all instances such an assistant prosecuting attorney must sublimate his civil practice to the job could deprive that system of the service of such highly skilled counsel as assistant prosecutor Callahan. Under § 545.780.3(5), the period of this continuance is excluded.

The total of the above three excluded periods between October 13, 1981, and April 5, 1982, is 173 days. *State v. O'Dell,* 649 S.W.2d 504 (Mo.App.1983); *State v. Hulsey,* 646 S.W.2d 881 (Mo.App.1983); *State v. Dentman,* 635 S.W.2d 28 (Mo.App. 1982). It is not necessary to consider an additional continuance found to serve the ends of justice and an additional continuance "occasioned" by the defendant. See *State v. Franco,* 625 S.W.2d 596 (Mo.1981); *State v. Bunch,* 656 S.W.2d 750 (Mo.App. 1983). The defendant's cause was tried within 117 non-excluded days and his second point is denied.

■ The defendant's next point is that he was denied a "speedy trial" as guaranteed by the Sixth Amendment to the Federal Constitution and Art. I, § 18(a) of the Constitution of Missouri. Section 545.780 does not supplant such a right. *State v. Richmond,* 611 S.W.2d 351 (Mo.App.1980). The guidelines for the enforcement of such right are established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Also see *State v. Buckles,* 636 S.W.2d 914 (Mo. banc 1982). For the purposes of this opinion only, it will be assumed the length of the delay in the defendant's trial was such as to act as the "triggering mechanism" necessary to require consideration of the factors to be weighed in determining that contention. *State v. Bolin,* 643 S.W.2d 806 (Mo. banc

1983). But see *State v. Goddard*, 649 S.W.2d 882 (Mo. banc 1983); *State v. Buckles*, supra.

 The reasons for the delay have been stated. They are not such as to be entitled to much, if any, weight against the state. *State v. LaRette*, 648 S.W.2d 96 (Mo. banc 1983), cert. denied, —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). The fact the defendant did not raise the issue of a speedy trial until the morning of his trial weighs heavily against him. *State v. Bolin*, supra. The defendant was in the penitentiary on other charges and his incarceration did not prejudice him. The record does not demonstrate and he does not suggest any specific manner in which the delay prejudiced his defense. *State v. Buckles*, supra. Upon balancing of the factors as required in *Barker*, the defendant was not denied a speedy trial within those guarantees. *State v. Buckles*, supra; *State v. Franco*, supra.

The defendant next contends the trial court erred in not suppressing his two oral and one written statements. As observed, at about 6:30 p.m. the defendant was found in the yard and taken to the control center. He first made an oral statement implicating two blacks in this matter. He was given a voice stress test. Later, at about 1:30 a.m. he made a second oral statement implicating inmate Carpenter. When questioned concerning certain physical facts, at about 2:00 a.m., he related the third version which he reduced to writing. That version admitted the stabbing but asserted self-defense.

 The defendant contends these statements were inadmissible because he did not intelligently waive his right to counsel and to be silent. He further contends they were the product of duress. To support this point, he cites a multitude of cases which abstractly support his position. But, his position has no factual basis. To support this point, he relies upon his testimony and ignores evidence to the contrary. For example, he asserted he gave the second version only after Warden Wyrick threatened and hit him. He claimed he gave the

third version, which is substantially the same as his trial testimony, only after he had been physically abused by Warden Wyrick and Sheriff Basinger. Aside from internal inconsistencies, the defendant's testimony was directly refuted by the testimony of Warden Wyrick and others. There was evidence of a voluntary, intelligent waiver and the absence, during the intermittent questioning, of any circumstances of duress. The trial court expressly found the defendant's testimony not to be credible. It was within its province to do so. *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981). Upon meticulous findings of fact, the trial court expressly found the statements to be voluntary and admissible. That determination was supported by the evidence and the defendant's point is denied. *State v. Baker*, 636 S.W.2d 902 (Mo. banc 1982).

 Defendant's next complaint is that he was denied effective assistance of counsel at a critical stage of the proceedings because he was arraigned on July 31, 1981, and was without counsel until October 13, 1981. A criminal defendant is entitled to the assistance of counsel at all critical stages of the prosecution and this right attaches at the pleading stage. *State v. Buckles*, supra; *State v. Alberts*, 519 S.W.2d 562 (Mo.App.1975). The time from arraignment until the beginning of trial is "perhaps the most critical period of the proceedings." *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed.2d 158, 164 (1932). The defendant was entitled to the assistance of counsel during the time in question.

 However, the record does not support defendant's argument he was not represented during this period. A public defender was appointed to represent the defendant at his arraignment on July 31, 1981. A docket entry indicates the appointment was for the limited purpose of arraignment only. Despite the limitation, the same public defender filed motions and started discovery on defendant's behalf on August 11, 1981. On August 24, 1981,

defendant filed a pro se motion for appointment of substitute counsel. On October 13, 1981, a different public defender was appointed to represent the defendant. The newly appointed public defender entered his appearance for the defendant that day. The inescapable conclusion is the initial public defender continued to represent the defendant until he was fired and relieved by the court. The defendant concedes the adequacy of representation from that day forward. The record does not support the defendant's claim.

Further, the only suggestion of prejudice is the defendant's conclusionary assertion that counsel did not investigate his case while the facts were fresh in the minds of potential witnesses. He presented inmate witnesses to bolster the salient aspects of his alleged self-defense. This included an inmate who purportedly from the shower area witnessed a part of the struggle. The presence of this witness or any other witness was refuted. The defendant does not suggest what facts were not presented or hint what witnesses were not interviewed or presented. That a witness might have been interviewed at an earlier date does not establish any basis for a new trial. *State v. Buckles,* supra. In view of the controlled environment of the penitentiary, the lack of specification is a demonstration of the absence of prejudice. It is speculative at most. *State v. Buckles,* supra. A denial of a constitutional right to counsel is not established by speculation. *State v. Buckles,* supra; *State v. Prigett,* 470 S.W.2d 459 (Mo.1971); *State v. Caffey,* 438 S.W.2d 167 (Mo.1969).

The defendant next contends the trial court committed reversible error by admitting in evidence four color photographs of the victim's nude body. His argument there was no foundation for such admission is not assigned a specific basis and is without factual foundation. His argument based upon the gruesome and inflammatory nature of the pictures is equally without merit. The state charged capital murder. The defendant claimed self-defense. The photographs showed the na-

ture and location of 64 wounds to the body of the victim. They "were clearly relevant as tending to prove or disprove the state's and defendant's theories" and were properly admitted. *State v. Barnhart,* 587 S.W.2d 308, 311 (Mo.App.1979). Also see *State v. Borden,* supra. This is true even though the wounds were described by oral testimony and each photograph was "not inadmissible because by accurately portraying a wound it tends to become inflammatory." *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982).

The defendant's next points concern an aspect of the trial that arose from the direct and cross-examination of the defendant. As previously outlined, the defendant contended the decedent Hood had made him a victim of sodomy. He asserted the homicide was in self-defense. On direct examination, the defendant unequivocally stated that he was not a homosexual.

By the first of these points, the defendant asserts error because the trial court permitted the state to call a guard at Algoa as a rebuttal witness. The guard testified the defendant had admitted to him the defendant's participation in a homosexual gang rape at Algoa. The defendant first argues the guard should not have been permitted to testify because he was not listed or disclosed as a witness by the state. The testimony of the guard was clearly admissible as rebuttal testimony. *State v. Cameron,* 604 S.W.2d 653 (Mo. App.1980). The doctrine of "reciprocal discovery" as discussed in *State v. Curtis,* 544 S.W.2d 580 (Mo. banc 1976) was not applicable to the trial of this case. The trial court did not err in permitting the guard to testify on rebuttal. *State v. Curtis,* supra; *State v. Tyler,* 622 S.W.2d 379 (Mo.App. 1980); *State v. Cameron,* supra.

Nor did the trial court err admitting that evidence even though it involved another criminal offense. By placing his homosexuality in issue, the defendant invited the production of that evidence. For the same reason, the cross-examination of the defendant concerning his participation in the homosexual rape was within the scope of

proper cross-examination. § 546.260; *State v. Murphy,* 592 S.W.2d 727 (Mo. banc 1979). Further, as the defendant's assertion and his impeachment was properly in evidence, it was not, as the defendant argues, error for the state in argument to attack his credibility by reference thereto. *State v. Harris,* 622 S.W.2d 330 (Mo.App. 1981).

■■■ At 1:27 p.m. during the rebuttal evidence the defendant announced he wanted to call Bob Shaw, an inmate at Moberly, as a witness. He stated Shaw would appear in rebuttal to the guard. The court said that if the progress of the case was such as to permit arrangements to be made for Shaw's appearance without delaying the trial, the court would cooperate. At 2:38 p.m. the case was ready to submit to the jury. The defendant repeated his oral request. The court noted the jury was sequestered and it was not possible to arrange for Shaw's appearance before the next morning. The request was denied. The defendant contends this was reversible error.

"The control of rebuttal or surrebuttal testimony is a matter within the sound discretion of the trial court and his rulings will not be disturbed except for abuse of that discretion." *State v. May,* 587 S.W.2d 331, 337 (Mo.App.1979). Further, in effect, the defendant sought a continuance. That request was addressed to the sound discretion of the court. *State v. Jordan,* 646 S.W.2d 747 (Mo. banc 1983); *State v. Gullett,* 633 S.W.2d 454 (Mo.App.1982). The defendant made no effort to comply with Rules 24.09 and 24.10. That failure could properly be considered by the trial court. *State v. McGinnis,* 622 S.W.2d 416 (Mo. App.1981). The same is true of the impeaching character of the proposed evidence. *State v. Mercer,* 600 S.W.2d 45 (Mo.App.1980). Upon two bases, the trial court did not err in denying the continuance. *State v. Huff,* 454 S.W.2d 920 (Mo. 1970); *State v. McGinnis,* supra.

■■■ The defendant contends reversible error occurred during his recross-examination. The defendant was asked if he had not been involved in ten convict violations at Algoa. After the defendant stated he did not remember, his counsel posed an objection. The objection was sustained, but a request for a mistrial was denied. On redirect examination, the defendant had previously testified that at Algoa he had not been found guilty of anything and had not admitted anything. This evidence no doubt prompted the state's question concerning the convict violations. In its context, the testimony of the defendant placed in issue his conduct at Algoa. After he had done so, the state's question was not improper. *State v. Lue,* 598 S.W.2d 133 (Mo. banc 1980); *State v. Stearns,* 617 S.W.2d 505 (Mo.App.1981).

During the guilt stage of the defendant's bifurcated trial, the closing argument of the state included the following remarks.

Mr. Shaffer uses terms like 'pressure-cooker existence' .... now, I don't know what that means. There's something about the facility up there at MSP that makes people bad. I don't quarrel with it, MSP's got some mean people in there. They rotate, they turn around; but generally speaking, the 2,000 inmates at MSP are going to be pretty close to the 2,000 meanest people in the state. I mean, that or they're going to be prime candidates .... and, there is one of them.

The defendant objected because, "[T]here's no evidence in the case whatsoever about this man being a mean man." He asked for a mistrial. The objection was overruled and the request denied. The defendant now contends the remarks applied to him an impermissible personal epithet and the action of the trial court was therefore reversible error.

■■■ The remarks are cryptic. The state should not apply personal epithets to a defendant or otherwise abuse him in such a manner to inflame the jury or appeal to prejudice. *State v. Hodges,* 586 S.W.2d 420 (Mo.App.1979). However, what may appear to be an epithet, may constitute the expression of a conclusion urged upon the basis of the evidence. *State v. Harris,* 351

S.W.2d 713 (Mo.1961). Further, "[i]t is universally held in Missouri that specific objections are required to evidence, arguments, or statements of counsel, and the objection must call the attention of the Court to the ground or reason for the objection." *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). The objection stated by the defendant was without foundation. There was evidence he participated in a homosexual gang rape. There was evidence he stabbed Hood 64 times. Contrary to the objection, this was evidence from which it could be concluded the defendant was a prime candidate to be a mean man.

Also, the remark must be considered in the full context of the trial and, in particular, the preceding argument. *State v. Harris,* supra. The defendant introduced evidence there were approximately 2,000 men at the penitentiary. He emphasized evidence that the institution made men mean. The record presented by the defendant does not include his argument which preceded the remark in question. It is obvious he referred to the penitentiary as a pressure-cooker environment. The state's argument could have been retaliatory. *State v. Knighton,* 518 S.W.2d 674 (Mo.App. 1975). It readily bears the connotation that the environment was such to make men mean and the defendant was subject to that environment. "The trial court has wide discretion in controlling argument and its rulings will be reversed only for abuse of discretion where the argument is plainly unwarranted and clearly injurious." *State v. Harris,* supra, 622 S.W.2d at 337.

■ Moreover, the defendant's sole request for relief was a motion for a mistrial. That relief is an extraordinary remedy. It is addressed to the sound discretion of the trial court. *State v. Detherow,* 648 S.W.2d 219 (Mo.App.1983). "Absent a manifest abuse of that discretion, the appellate court should not interfere." *State v. Hodges,* supra, 586 S.W.2d at 425. For all of these reasons, it is clear the defendant has not established error. *State v. Harris,* supra.

■ By his last point, the defendant attacks the sufficiency of the evidence to support the submission of paragraphs Second, Third and Fourth of Instruction No. 5 (MAI–CR2d 15.02). The fallacy of this point is demonstrated by his argument supporting that point. That argument is based upon a view of the evidence favorable to the defendant. That is not a proper standard for review. The submissibility of the case is to be considered upon a consideration of the facts in evidence and all favorable inferences reasonably to be drawn therefrom in the light most favorable to the state, disregarding all contrary evidence and inferences. *State v. LaRette,* supra.

■ The intent of the defendant to take the life of Hood is readily inferred from the 26 or 27 stab wounds to a vital part of the body inflicted by a deadly weapon. *State v. Davis,* 653 S.W.2d 167 (Mo. banc 1983). This is particularly true as the defendant left the victim without aid. *State v. Tate,* 637 S.W.2d 67 (Mo.App.1982). The same evidence establishes the defendant's knowledge he was practically certain to cause the death of Hood. *State v. LaRette,* supra.

■ There was a clear basis for the jury to find the element of deliberation as submitted in that instruction. Deliberation may be proved by indirect evidence and inferences reasonably drawn from the circumstances. *State v. Turner,* supra. "Whether there was deliberation is not dependent upon the time involved in the act." *State v. Wilson,* 645 S.W.2d 372, 373 (Mo. 1983). The number, severity and location of the wounds proved such a basis. *State v. Johnson,* 603 S.W.2d 683 (Mo.App.1980). The inference of deliberation is made more apparent by the fact the defendant procured and concealed a knife. *State v. Armbruster,* 641 S.W.2d 763 (Mo.1982). Also see *State v. Seals,* 515 S.W.2d 481 (Mo.1974). It is emphasized by that portion of his handwritten statement· which reads: "I desided [sic] I had to do something to show these people that I aint [sic] going to be nobodys punk and that that the only reason that happened was because he forsted [sic] me. Then I went and got a knife

and I stabed [sic] frank [sic] Hood on the 17th of July." It is strengthened by the fact the defendant failed to seek aid for Hood and gave false statements concerning the homicide. *State v. Thornton*, 532 S.W.2d 37 (Mo.App.1975).

The defendant also argues the evidence does not support a determination the death of Hood was not a justifiable homicide. He emphasizes his testimony and that of other inmates to establish Hood was the aggressor. The jury rejected this evidence of self-defense. It was their prerogative to do so. *State v. Johnson*, supra; *State v. Wilson*, supra. The defendant's last point is denied and the judgment is affirmed.

HOGAN and PREWITT, JJ., concur.