STATE of Missouri, Respondent,

v.

Roberta Carlene BORDEN, Appellant.

No. 61718.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1980.

Scott B. Tinsley, Springfield, for appellant.

John Ashcroft, Atty. Gen., Paul Otto, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of capital murder, defendant's punishment was fixed by the jury at life imprisonment without probation or parole for a minimum of 50 years. § 565.008.1, RSMo 1978.

As error defendant contends the trial court improperly (1) permitted testimony of her accomplice's intended plea to a charge of second degree murder; (2) admitted photographs of the scene depicting the victim's body; (3) excused a venireman for cause who expressed unwillingness to consider the death penalty; (4) refused to give two non–MAI–CR instructions tendered by defendant; (5) failed to quash the information, because the life sentence prescribed by § 565.008, RSMo 1978, for capital murder is violative of the Eight Amendment's proscription upon cruel and unusual punishment. In addition, she complains the court reporter failed to provide a complete transcript of the trial proceedings.

Defendant Roberta Borden, married to Delbert Borden in 1960, entered an illicit romance with Donald Pilkerton whom she met in a Springfield, Missouri bar during the summer of 1977. After trips to Florida

and Texas with Pilkerton, she and her two children went to Monett, Missouri, and moved into a trailer with him. In late December, a reconciliation was effected when Delbert persuaded her to return with the children, to their home in Springfield.

Defendant told Pilkerton at the time of the reconciliation that "we'll be back together pretty quick, that it wasn't overwith." Shortly, he moved to a Springfield motel (defendant paid several of Pilkerton's motel bills) but stayed with defendant whenever Delbert was out of town. During certain clandestine rendezvous in early January and February, 1978, defendant and Pilkerton plotted Delbert Borden's death. They discussed various means, and one attempt at murder went awry when Pilkerton brought a gun to the Borden residence but on second thought was unable to carry through the scheme. Defendant then told Pilkerton she would kill her husband and he agreed to help. On February 27, 1978, Pilkerton took his loaded .22 caliber sawed off rifle to the Borden home and, when warned of Delbert's approach, hid in a crawl space beneath the house until dark. Emerging from the hiding place, he entered the house by the back door and handed the gun to the waiting Roberta. Without further delay, she took the gun to the adjoining family room and killed her husband as he sat watching "TV." She told Pilkerton to strike her and tie up the children in an attempt to divert suspicion from herself. When the police arrived, defendant stated that three persons had broken in, shot Delbert, tied up her children, knocked her unconscious and ransacked the house. Several days later defendant gave a different version of the occurrence and this time she accused Pilkerton of the slaying. Ultimately Pilkerton, a key State's witness, offered to plead guilty to a second degree murder charge in exchange for his testimony at defendant's trial. It was, however, a part of the agreement that if the witness reneged and failed to tell the truth "on this whole story" the bargain would be (in the witness' word) "dropped."

■ Defendant contends the prosecution improperly disclosed the existence and terms of witness Pilkerton's plea bargain. This fact was mentioned during voir dire, in opening statement and again during Pilkerton's direct examination, all without objection from defendant. Equally important, defense counsel conducted a protracted crossexamination on the details of that matter and brought out certain features not previously developed.

■ Failure to object at the earliest opportunity to the admission of evidence or argument of counsel constitutes a waiver of the claim. *State v. Ross*, 554 S.W.2d 522, 523 (Mo.App.1977); *State v. Worthington*, 582 S.W.2d 286, 291 (Mo.App.1979); *State v. Henderson*, 510 S.W.2d 813, 822 (Mo.App. 1974). The underlying policies requiring contemporaneous objection run contrary to defendant's present claim of error. Timely objection to putative error affords the trial court an opportunity to invoke remedial measures rather than relegating appellate courts to the imprecise calculus of determining whether prejudice resulted. Moreover, requiring timely objection minimizes the incentive for "sandbagging," an improper tactic sometimes employed to build in error for exploitation on appeal should an unfavorable verdict obtain. Under these circumstances, it is settled that an appellant will not be heard to complain such error. The point is not preserved for review.

Nonetheless we examine for plain error to determine if disclosure of the Pilkerton plea bargain resulted in "manifest injustice or miscarriage of justice." Rule 29.12(b). Relying on *State v. Fenton*, 499 S.W.2d 813 (Mo.App.1973), defendant urges that disclosure of Pilkerton's willingness to accept the State's offer (not yet acted upon) in exchange for his favorable testimony, tainted defendant with guilt by association and denied her a fair trial, constituting error rising to the level of manifest injustice. We do not agree. In *Fenton*, the prosecutor employed prior guilty pleas (faits accomplis) of two co-defendants as substantive evidence of defendant's guilt. As stated by the prosecution, they were presented as ex-

planation "of the testimony which he would offer to *prove the state's* case." 499 S.W.2d 813, 815. (Emphasis added.)[1] Here the prosecutor anticipating the defense attack (which in fact occurred during defense counsel's vigorous cross–examination) on Pilkerton's credibility, disclosed the plea bargain to reveal in advance the witness' self–interest and personal bias. Disclosure of the inchoate plea bargain and the State's agreement to reduce charges in return for the testimony of a witness (here an accomplice) was relevant to show the personal interest of the witness and constituted a proper basis for impeachment.

Where several persons are involved in a single criminal transaction, '[p]romises of immunity from prosecution, reduction of charges, reduction of punishment, and dismissal of charges are common methods of obtaining testimony implicating persons other than the witness.' and '[w]hether such promises have been made is an important fact which a jury must have to evaluate the testimony.' *State v. Brooks*, 513 S.W.2d 168, 173–174[9–10] (Mo.App.1973). It is always relevant to show the interest or bias of a witness, *State v. Nebbitts*, 498 S.W.2d 762, 764[2] (Mo.1973), even though such evidence has no bearing on the issues of the case. *Thornton v. Vonallmon*, 456 S.W.2d 795, 798[2] (Mo.App.1970). How far the inquiry into the bias or interest goes is left largely to the discretion of the trial court. *State v. Pigques*, 310 S.W.2d 942, 947[8] (Mo.1958). Absent a clear abuse of discretion, we will not interfere with the trial court's ruling. *Aiple v. South Side*

*Nat'l Bank in St. Louis*, 442 S.W.2d 145, 152[7] (Mo.App.1969).

*State v. Neal*, 526 S.W.2d 898, 901 (Mo.App. 1975). As the court in *Neal* explained at 901.

> . . . this defendant could develop to explain the interest or bias of the witness. So too, may the state in anticipation and by way of explanation, on direct examination, demonstrate such interest of the witness to the jury.

We cannot say the presentation of information demonstrating a probable bias of the State's key witness in anticipation of an attack by way of cross–examination was error under the circumstances here.[2] Most certainly it cannot be described as manifest injustice constituting plain error.

■ Defendant's next contention is that the omission of a small portion of the transcript resulting from a machine malfunction "denies" her statutory right to a full appeal.[3] Absent from the 1,068 page transcript are the last part of the State's cross–examination as well as the redirect and recross–examination of defendant, rebuttal testimony of two prosecution witnesses, and the first portion of the State's closing argument. In sum, approximately 42 pages of testimony and eight pages of argument are missing.

■ It is the responsibility of the appellant to cause a transcript of proceedings to be prepared and filed with the clerk of the appropriate appellate court. Rule 81.12(a), applicable per Rule 28.18, 1979 Rules, now Rule 30.04(c) and (d). Such duty is not

---

1. *State v. McCarthy*, 567 S.W.2d 722, 723 (Mo. App.1978) also relied upon by defendant is likewise inapt. There the prosecution during cross–examination of the defendant sought to introduce evidence of a confederate's guilty plea. Not only was the guilty plea irrelevant to any issue in the case, it also was an improper basis for the impeachment and was objected to by defense counsel on the ground that it created an inference of guilt by association.

2. Federal decisions recognize the right of the prosecutor on direct examination to elicit testimony respecting a pending plea bargain arrangement from a government witness on the grounds that deferral of disclosure until cross–

examination might give the jury the mistaken impression of government concealment. *United States v. Blackwood*, 456 F.2d 526, 529 (2d Cir. 1972), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); *United States v. Panetta*, 436 F.Supp. 114, 128 (E.D.Pa.1977), affirmed, 568 F.2d 771 (3rd Cir. 1978).

3. The "point" set forth in appellant's brief is subject to the criticism that it fails to state what action of the trial court is sought to be reviewed and why its action was erroneous. This failure to comply with Rule 84.04(d), V.A.M.R., would in most instances call for a summary dismissal of the point.

discharged by merely transmitting whatever the court reporter prepares. If material omissions occurred it was incumbent upon the defendant–appellant to attempt to correct the record by stipulation or by motion to the appropriate appellate court. Rule 81.12(c) (Mo. Rules of Court 1979) amended, Rule 81.12(e) (Mo. Rules of Court 1980). Reversal and retrial will not be required unless the appellant exercises due diligence to supply the omission or correct the defect and establishes prejudice as a result of inability to present a complete record. *Jackson v. State*, 514 S.W.2d 532, 533 (Mo.1974). Defendant here has failed to meet these requirements. Nothing suggests an attempt to obtain by stipulation or motion the substance of the missing testimony or argument. Moreover, defendant has offered nothing to support her conclusory assertion that the omissions were prejudicial.[4] We reject this claim of error.

■ We are next urged to extend the prohibition against disqualification of veniremen who voice general objections to capital punishment, to this case in which no death sentence is imposed. See *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968).

Initially venireman Jordan responded affirmatively when the prosecutor asked if any of the array would be irrevocably committed to vote against the death penalty regardless of the facts. During subsequent questioning Jordan stated he would give fair, but not equal, consideration to both possible penalties (death or life imprisonment without probation or parole for 50 years), and he "would try to go by what the law says." However, he finally stated, "I can't see how I could accept the death penalty." Upon the State's motion to strike

for cause and over defendant's objection, Jordan was excused. The United States Supreme Court and this Court have rejected an extension of *Witherspoon–type* restrictions to cases where the death penalty is not imposed. *Bumper v. North Carolina*, 391 U.S. 543, 545, 88 S.Ct. 1788, 1789, 20 L.Ed.2d 797 (1968); *State v. Wallace*, 504 S.W.2d 67, 70 (Mo.1973), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 76 (1974); *State v. Adams*, 497 S.W.2d 147, 153 (Mo. 1973); *State v. Warters*, 457 S.W.2d 808, 812 (Mo.1970); *State v. Pollard*, 447 S.W.2d 249, 251–252 (Mo.1969). Nothing here persuades or calls for a reversal of our prior cases. The contention is denied.

■ Defendant next contends that § 565.008.1, RSMo 1978,[5] providing for a mandatory sentence of life imprisonment without probation or parole for 50 years upon conviction of capital murder if the death penalty is not imposed, is violative of the Eighth Amendment's proscription against cruel and unusual punishment. Defendant does not suggest a mandatory life sentence for the crime of capital murder is invariably excessive; rather, the Eighth Amendment requires individualized consideration of each offender and each crime.

When determining the constitutionality of legislatively prescribed punishment, we presume validity and those who seek invalidation bear a heavy burden. *State v. Higgins*, 592 S.W.2d 151, 155 (Mo. banc 1979). Defendant has failed to meet that burden. Recently the United States Supreme Court in holding the Eighth Amendment required individualized consideration of each offender in capital cases, explicitly refused to apply the principle to cases in which the death penalty is not imposed. "We recognize that, in noncapital cases, the established

---

**4.** This assertion, appearing in defendant–appellant's brief, personifies her position, ". . . *if anything material* to Defendant's appeal was omitted, her conviction should be reversed." (Emphasis ours.)

**5.** Section 565.008.1, RSMo 1978, provides:
  Persons convicted of the offense of capital murder shall, if the judge or jury so recommends after complying with the provisions of sections 565.006 and 565.012, be punished to

death. If the judge or jury does not recommend the imposition of the death penalty on a finding of guilty of capital murder, the convicted person shall be punished by imprisonment by the division of corrections during his natural life and shall not be eligible for probation or parole until he has served a minimum of fifty years of his sentence.

practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Lockett v. Ohio*, 438 U.S. 586, 604–605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978).

Whatever the merits of individualized sentencing vis a vis mandatory minimum, such determinations are matters of policy within the legislative province. Defendant's argument seeks to achieve under the Eighth Amendment what we have recently declared intolerable under Art. II of the Constitution of Missouri: the usurpation by the judiciary of legislative authority to prescribe punishment. See *State v. Higgins*, 592 S.W.2d 151, 156–157 (Mo. banc 1979).

A mandatory life sentence without probation or parole for 50 years for one convicted of capital murder spares the life of the offender while it guarantees society's protection by ensuring a minimum confinement of 50 years in all cases. We may not substitute the policy choice urged by defendant for that prescribed by the legislature to further these important objectives.

■ Defendant's other allegations of error require little discussion. She asserts the trial court erred in rejecting two non–MAI instructions offered by the defendant. The first, concerned the number of witnesses testifying on either side, and the weight and credibility to be given the testimony of each. Instruction MAI–CR 2.01 was given to the jury, and no additional instruction on the believability of a witness, or the effect, weight, or value of a witness' testimony was proper. *State v. Gray*, 549 S.W.2d 99, 101 (Mo.App.1977): MAI–CR No. 2.01, Notes on Use (2). Hence the trial court did not abuse its discretion in rejecting instruction I.

■ The other instruction pertained to pretrial publicity. The refusal of a cautionary instruction is within the discretion of the trial court. *State v. Bibbs*, 461 S.W.2d 755, 760 (Mo.1970). The jury was cautioned about pretrial publicity during voir dire and three persons were excused for cause due to their exposure to media reports concerning the crime. In addition, the jury was given MAI–CR 1.08(a) which directs that jurors disregard outside sources of information. The point is not well taken.

■ Defendant's final point is that the admission of black and white photographs depicting the deceased in the chair where he was sitting when shot as well as others taken before the autopsy were inflammatory, prejudicial and require reversal. We cannot agree. The photographs show the scene, the location of the body, the wounds and various objects in the room relevant to a number of crucial issues in the trial including the nature of the wound, identity of the deceased and especially the question of intent and deliberation. The probative value of the photos outweighs possible prejudicial effect. We conclude the trial judge did not abuse his discretion in admitting them. *State v. Higgins*, 592 S.W.2d 151, 162 (Mo. banc 1979); *State v. Ford*, 585 S.W.2d 472, 474 (Mo. banc 1979). The judgment of the Circuit Court of Greene County is affirmed.

DONNELLY, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., and SEILER, J., concur in result.