

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED109896 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| TIMOTHY J. PERKINS, | ) | Honorable Ellen Hannigan Ribaudo |
| | ) | |
| Appellant. | ) | Filed: December 6, 2022 |

## I. INTRODUCTION

Timothy Perkins ("Defendant") appeals from the judgment convicting him after a jury

trial of two counts of statutory sodomy in the first degree, violating § 566.062.[1] The trial

court sentenced him to consecutive terms of ten years of imprisonment on each count, totaling 20

years in the Missouri Department of Corrections. On appeal, Defendant raises ten points. We

affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Viewed in a light most favorable to the verdict,[2] the evidence adduced at trial showed the

following facts: At age eight, J.B.[3] ("Victim") lived with his mother and two sisters in a

residence where Defendant also lived. On or about September 23, 2019, Victim was in the living

---

[1] All statutory references are to the Revised Statutes of Missouri (RSMo) 2016, as updated, unless otherwise indicated.
[2] *State v. Forrest*, 183 S.W.3d 218, 223 n.1 (Mo. banc 2006); *State v. West*, 551 S.W.3d 506, 510 (Mo. App. E.D. 2018).
[3] Pursuant to Section 595.226 RSMo (2017), the victim's full name is redacted.

1

room playing games when Defendant asked Victim to do him a favor and suck his penis. Defendant pulled down his pants and made Victim kneel in front of him. Initially, Defendant made Victim rub Defendant's penis with both hands then suck his penis while Defendant was seated on a couch. Victim observed a lot of black hair in Defendant's private area. Victim stopped sucking Defendant's penis when Victim's mother ("Mother") came upstairs and saw what Victim was doing. After Victim told Mother that Defendant made him touch and suck his penis, Mother called the police.

Shortly thereafter, St. Louis County Police Officer James Sims ("Officer Sims") responded to a call of a possible sexual assault at Victim's home. When Officer Sims arrived, he saw Mother and Defendant arguing outside and overheard Mother state that "she couldn't believe that he done (sic) that." After locating the Victim inside the residence, Officer Sims questioned him privately. Victim stated Defendant made him touch Defendant's "tuda" When asked what he meant by "tuda" Victim pointed down to his private area. Victim went to the hospital.

On October 15, 2019, Victim met with forensic interviewer Kathleen Knudson ("Knudson") at the Children's Advocacy Center. When asked what he came in to talk about, Victim answered that a man named "TJ" (Defendant) had asked him to do a favor for him at night in the living room. Victim further stated that Defendant asked him, "Can you suck my privates?" Victim told Knudson that he touched Defendant's private area with his hands and mouth. Then his Mother came upstairs, saw them and asked Victim what he was doing. Victim told Mother that Defendant made him touch Defendant's privates, prompting Mother to call the police. Victim said the police arrived and later arrested Defendant.

After responding to more questions, describing the layout of the furnishings and explaining his positioning in relation to Defendant's location in the living room, Victim said he

was playing games when Defendant asked him to do "that favor." Victim stated he first had to touch Defendant's penis with his hands, demonstrating while using a pencil. Victim said Defendant was clothed initially but Defendant later pulled down his pants. Victim said that he saw Defendant's pubic hair while gesturing to the location and he described how he touched and made oral contact with Defendant's private area. Additionally, Victim knelt on the ground to demonstrate how he was positioned when Defendant forced him to make oral contact with his private area. During the interview, Victim also circled the genitals on a diagram of a male body to further describe what he meant when referring to Defendant's "privates."

When asked what made him stop the oral contact, Victim responded that his Mother came upstairs. After Mother took her son into another room, Victim said that he then told her that Defendant forced him to touch the genital area and "suck his privates," prompting Mother to call the police.

The State charged Defendant with two counts of statutory sodomy in the first degree. Defendant deposed Victim prior to trial and the court ruled that Victim's statements to both Officer Sims and to Knudson were admissible as substantive evidence under § 491.075.

When arguing the State's motion *in limine*, the State asked the court to preclude Defendant from presenting evidence or argument that Mother and her boyfriend, Jewell Ford, robbed Defendant on the night of the incident. Relatedly, Defendant intended to present evidence Mother had physically abused her son, Victim, and owed Defendant money. Defendant also informed the court that he intended to argue that Mother coached Victim to make up the allegations.

Consequently, the trial court ruled Defendant could present evidence of what occurred on September 23, including any evidence that Mother and Ford robbed Defendant. However, the

3

court barred evidence that Mother physically abused her son or that she owed Defendant money, finding there was not any evidence that she coached the Victim. Further, the trial court ruled that whether Victim was abused by Mother was not relevant to whether Victim was credible when making his assertions against Defendant.

Additionally, Defendant argued that Mother's physical abuse of Victim motivated Victim to fabricate the allegations of sexual abuse to gain sympathy from Mother and deter her from continuing the physical abuse. In support of his contention, Defendant pointed to Victim's deposition testimony that Mother hit him almost daily prior to the September 23 incident but she stopped hitting him during the two months he lived with her after the incident and before moving in with his grandmother.

The trial court pointed out that Defendant lacked a good faith basis to elicit this evidence because Defendant's attorney failed to confront Victim on whether the abuse prompted him to fabricate or exaggerate his allegations against Defendant at the deposition. The trial court found that defense counsel's suggested inference was "not … a reasonable inference based upon the circumstances." The court stated:

> Whether or not the child was beaten or not beaten by his mother, and whether or not that beating allegedly stopped at the same time that this might have occurred is not sufficient for there to be an inference drawn that that is why the child made up these allegations. So I am not going to allow that evidence in. Or that argument . . . .

Following the court ruling addressing the motions *in limine*, the parties conducted voir dire and both the State and defense gave opening statements. The testimony provided at trial relevant to this appeal is summarized below:

### Officer Sims's Testimony

4

Officer Sims recounted that he responded to a call of a possible sexual assault at Victim's home on September 23, 2019. When he arrived, he observed Defendant and Mother in the street arguing. Officer Sims heard Mother say, "she couldn't believe that he done[sic] that." Defendant objected to this testimony as hearsay. The State argued the statement explained Officer Sim's subsequent conduct. The court overruled Defendant's objection. Sims testified that next he entered the house and interviewed Victim, who told him that Defendant "made him touch his tuda." After asking Victim what he meant, Victim pointed down at his private parts.

### Victim's Testimony

Victim testified he lived with his grandmother but used to live with Mother and Defendant. Victim identified Defendant in the courtroom. Victim testified one evening he was in the living room and Defendant forced him to touch Defendant's "private" with his hand. He testified he did not have to touch Defendant's private with anything else.

Then, out of the jury's presence, Defendant conducted an offer of proof regarding Mother abusing Victim. Victim testified Mother hit him almost daily as a consequence of bad behavior. He said Mother used drugs on a daily basis but she was not "doing them" at the time of the incident. He stated Mother did not owe Defendant any money. Victim testified Mother did not hit him after the night of the incident or over the course of the next few months before relocating to live with his grandmother. The court denied Defendant's request to solicit this testimony in front of the jury.

The State also called Knudson, who testified she interviewed Victim about his allegation. Further, the State played Victim's recorded forensic interview for the jury before resting.

### Defendant's Testimony

5

On direct examination, Defendant denied forcing Victim to touch his penis or perform oral sex. Defendant stated that he was not in the living room with Victim but was sleeping in his bedroom on the evening of the alleged incident. Defendant said Mother and her boyfriend, Jewell Ford, woke him up, pointed a gun in his face and demanded his money. Defendant testified he believed they were also looking for drugs. Defendant stated Ford then called 911 and said he was reporting a possible rape. Defendant stated Ford and Mother took $300 and ultimately all his property because he never returned to the home following the allegations. Defendant admitted both he and Victim were at the residence on the night of the incident, both before and after the police arrived but he was detoxing from heroin, making him too sick to move.

Again, the court allowed Defendant to make an offer of proof outside the hearing of the jury. Defendant testified that Mother used drugs daily, acquired her drugs from Defendant and even continued to obtain drugs from Defendant without paying him. In fact, Mother owed Defendant $80 for drugs, he said. He also testified that he saw Mother beat Victim almost daily, including at times after she ingested crack and heroin.

The trial court denied Defendant's request to present these allegations to the jury. Further, the court reiterated its ruling that Defendant was permitted to testify about the robbery allegations but his assertions about Mother's drug use and beatings were not relevant to the Victim's allegations. Further, the court explained there was no evidence that whether Mother was beating Victim influenced the situation or prompted Victim's allegations. Thus, the court denied Defendant's request to testify about those additional issues.

## Closing Argument

During closing argument, the State contended there was sufficient evidence to find Defendant guilty of both counts of statutory sodomy. The prosecutor summarized Victim's

testimony, describing his oral contact with Defendant's penis, seeing a lot of black hair around Defendant's private area and demonstrating how he was positioned on his knees in front of Defendant. Further, the State reminded the jury how Victim demonstrated the motion he had to perform on Defendant's penis while using his hands.

Additionally, the State argued that Victim did not benefit by testifying in court about this "embarrassing and humiliating" experience and he had "absolutely no motive" to fabricate these allegations. Other than Defendant's testimony, "There has been absolutely no evidence at all presented to support the defendant's theory that some robbery occurred," the State further contended.

Defense counsel argued that Defendant had been living a nightmare that began after Victim's mother and Ford woke him up and pointed at gun him while he was sick and detoxing in his bedroom. While they were robbing him at gunpoint, Jewell Ford called 911, Defense counsel argued. The State objected when Defense counsel said that the timing of Victim's allegations was suspicious because it happened while Defendant was sick and on the same night Mother robbed Defendant. At sidebar, the court and counsel reminded Defendant's counsel about the court's ruling on the motion *in limine*, barring argument that Mother's alleged motivations prompted her to coach Victim about his accusations. Immediately following the sidebar, Defense counsel questioned Mother's "motivations" which prompted an objection and a ruling sustaining the objection.

In rebuttal, the State argued Defendant's theory about a robbery did not make sense considering Officer Sims heard Mother yelling at Defendant, "I can't believe you did those things to him." Defense counsel objected to this statement but the trial court overruled the objection. The jury found Defendant guilty of both counts.

Following a penalty phase, the jury recommended Defendant serve ten years for each statutory sodomy count. Subsequently, the court honored the jury recommendation and ordered the sentences to run consecutively. Now Defendant appeals.

### III. DISCUSSION

Defendant raises ten points on appeal but we address these out of order and combine some subject matter for efficiency purposes.

### A. Points I and II

In Points I and II, Defendant focuses on the exclusion of evidence relating to Mother's physical abuse of Victim. In Point I, Defendant argues the trial court abused its discretion in excluding Victim's testimony that Mother beat him almost daily and that the beatings stopped once he made allegations against Defendant. In Point II, Defendant similarly contends the trial court abused its discretion in refusing Defendant's testimony that Mother beat Victim on a nearly daily basis.

### <u>Standard of Review</u>

"'It has long been recognized that defendants in rape or sexual assault cases should be allowed to introduce evidence that the prosecuting witness's story is a fabrication.'" *State v. Lawrence*, 569 S.W.3d 545, 552 (Mo. App. S.D. 2019) (quoting *State v. J.L.S.*, 259 S.W.3d 39, 45 (Mo. App. W.D. 2008)). While the interests or bias of a witness are always relevant, "the scope of the evidence used to show bias is within the broad discretion of the trial court." *State v. Taylor*, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019)

"Our standard of review in addressing the admission or exclusion of evidence at trial is for abuse of discretion." *State v. Ellis*, 512 S.W.3d 816, 825 (Mo. App. W.D. 2016). The trial court "has broad discretion to admit or exclude evidence at trial." *State v. Zink*, 181 S.W.3d 66,

72 (Mo. banc 2005). "That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* at 73 (quoting *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005) (internal brackets omitted)). "[I]f reasonable [persons] can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Brown*, 939 S.W.2d 882, 883-84 (Mo. banc 1997).

"If we find an abuse of discretion, 'our role on direct appeal is to review for prejudice, not mere error, and [we] will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *Taylor*, 588 S.W.3d at 637 (quoting *Ellis*, 512 S.W.3d at 825). "'Our review to determine prejudice varies depending upon whether evidentiary error involves the admission or the exclusion of evidence in a criminal trial.'" *Id.* (quoting *Ellis*, 512 S.W.3d at 825). Because a defendant in a criminal case has a constitutional right to present a complete defense, "the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice." *Id.* (quoting *Ellis*, 512 S.W.3d at 825). Where the defendant has properly preserved the error for appellate review, it is the State's burden to rebut this presumption by demonstrating that it was harmless beyond a reasonable doubt. *State v. Sanders*, 126 S.W.3d 5, 23 (Mo. App. W.D. 2003).[4]

## Analysis

The court ruled *in limine* that Defendant's testimony regarding the alleged robbery was admissible, but evidence Mother physically abused Victim was inadmissible. The court reasoned

---

[4] The State cites to the standard for prejudice as articulated in *State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006), where the erroneous *admission* of evidence took place. *See* this Court's analysis *infra* of Point VIII. As Points I and II allege the improper *exclusion* of evidence, the Court finds the standard for prejudice set forth in *State v. Sanders*, 126 S.W.3d 5, 23 (Mo. App. W.D. 2003), and *State v. Taylor*, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019), applicable.

there was no evidence that Mother coached Victim to make false allegations. Further, the court explained that the testimony regarding the beatings was irrelevant to show whether Victim was truthful in his sexual assault allegations against Defendant. The court also concluded the inference that Victim was motivated to fabricate the allegations of sexual abuse on his own to get sympathy from Mother to stop her from physically abusing him was unreasonable.

At trial, Defendant made an offer of proof with Victim that Mother hit Victim regularly when he misbehaved at school, at home, or when he lied or stole. Victim testified that Mother did not hit him after the night of the sexual abuse even though he lived with her for an additional two months before relocating to live with his grandmother. Later, Defendant testified in an offer of proof that he saw Mother beat Victim "almost every day" and she would hit him "for anything . . . for acting out . . . [a]nytime he screwed up at school . . . [a]nytime he annoy[ed] her. Any time he got caught in a lie or a cross-step." Following the offers of proof, the trial court refused to admit the evidence finding the record did not support the inference Victim lied about Defendant sexually assaulting him because Mother hit Victim.

Defendant argues this Court should conclude both Defendant's testimony and Victim's testimony about Mother's physical abuse is admissible. Defendant contends the excluded evidence is relevant to show Victim had a possible motive to fabricate allegations against Defendant in order for the abuse to stop.

"To be admissible, evidence must be both logically and legally relevant." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "'Evidence is logically relevant if it tends to make the existence of a material fact more or less probable.'" *Id.* (quoting *State v. Collings,* 450 S.W.3d 741, 756 (Mo. banc 2014)). This is a very low-level test that is easily met. *State v. Thigpen*, 548 S.W.3d 302, 315 (Mo. App. E.D. 2017). Evidence is legally relevant when the probative value of

10

the evidence outweighs unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or cumulativeness. *Taylor,* 466 S.W.3d at 528 (quoting *Johnson v. State*, 406 S.W.3d 892, 902 (Mo. banc 2013) (internal quotations and citations omitted)). The balancing of the probative value and prejudicial effect of evidence rests within the sound discretion of the trial court. *State v. Williams*, 922 S.W.2d 845, 852 (Mo. App. E.D. 1996). The trial judge is in the best position to evaluate whether the probative value of proffered evidence outweighs its prejudicial effect. *State v. Lloyd,* 205 S.W.3d 893, 902 (Mo. App. S.D. 2006).

Here, Defendant's offer of proof at trial fails to establish that testimony regarding Mother's physical abuse is logically relevant. Specifically, Defendant does not show a connection between Victim's disclosure and Mother's inflicted beatings. The evidence in the record does not reflect that Mother coached Victim to fabricate an allegation. Also, the evidence does not show Victim had any reason to believe he could stop Mother's abuse by lying. For example, there are not any assertions that Victim previously obtained a benefit from making an allegation of sexual assault or halted Mother's physical abuse by gaining her sympathies. Had Defendant provided such evidence, Victim's credibility may be more properly called into question. *See State v. Samuels*, 88 S.W.3d 71, 83-84 (Mo. App. W.D. 2002) (distinguishing cases where witnesses had received a benefit from the prior accusations of abuse that called their credibility and motives into question).

Defendant urges this Court to be guided by *State v. Hedrick*, 797 S.W.2d 823, 828 (Mo. App. W.D. 1990), when finding the trial court erred in excluding relevant evidence of Mother's beatings. Defendant argues under *Hedrick*, he should be afforded wide latitude in developing the subtle influences and pressures which may be at work upon Victim to fabricate.

11

In *Hedrick*, the defendant appealed from his convictions of first-degree sexual abuse and sodomy against his ten-year-old daughter, arguing the trial court erred in restricting the impeachment evidence of the alleged victim. *Id.* at 824. In an offer of proof at trial, the defendant-father sought to introduce evidence that he and the victim's custodial mother had been divorced for some time and that there was a long history of conflict between them. *Id.* While they were engaged in a heated custody dispute, the mother reported to the Division of Family Services (DFS) that the defendant had sexually abused her daughter which was investigated but was unsubstantiated. *Id.* The week prior to the victim's disclosure, her mother had disappeared from home, attempted suicide, and quarreled with another individual while DFS sent a social worker to visit the home. *Id.* at 825. The defendant-father sought to argue that due to the recent visit from DFS, victim feared being removed from her mother's custody and that either victim or her mother fabricated the sexual abuse story to prevent a custody modification in father's favor. *Id.* at 825. According to the defendant, his proposed evidence would have impeached victim by showing her motive to fabricate the incident involving criminal allegations. *Id.* at 824. The *Hedrick* trial court excluded this evidence. *Id.* However, the Western District agreed with defendant and reversed the trial court's decision because the evidence was admissible to impeach the complaining witness to show bias. *Id.* at 828.

*Hedrick* is distinguishable from the circumstances here. In *Hedrick*, there was considerable evidence of record documenting the rocky relationship between the mother, the defendant-father, the father's mother and the victim. Moreover, additional evidence showed the victim disclosed her father's sexual abuse to her mother during the same conversation where her mother had described unspecified deviate sexual practices performed by the defendant on mother during their marriage. *Id.* at 825.

In the instant matter, considerable evidence does not exist to support a reasonable inference that Victim was motivated to fabricate an allegation against Defendant to escape physical abuse inflicted by Mother. Defendant's argument that Victim's motive can be discerned solely from the cessation of Mother's abuse after he made the allegation is a bootstrapping argument that is attenuated at best. "'The range of external circumstances from which probable bias may be inferred is infinite. . . . [But, in] general, these circumstances should have some clearly apparent force . . . or, should not be too remote.'" *State v. Foster*, 854 S.W.2d 1, 4 (Mo. App. W.D. 1993) (quoting 3A Wigmore, Evidence in Trials at Common Law §§ 945, 949 (Chadbourn Rev. 1970)). Here, Defendant relies on circumstances that are too attenuated and remote to infer bias.

As discussed above, Defendant's offer of proof fails to satisfy even the low-level test for logical relevance. Nor can the evidence be deemed legally relevant—any minimal probative value is outweighed by the risk it could confuse or mislead the jury. Accordingly, the trial court did not abuse its discretion in refusing to admit such evidence. Finding no abuse of discretion, a rebuttable presumption of prejudice was not created when excluding the evidence. Points I and II are denied.

### B.   Points IV and V

In Points IV and V, Defendant challenges the exclusion of evidence relating to Mother's drug habit. In Point IV, Defendant argues the trial court abused its discretion in excluding Defendant's testimony that Mother owed him money, continued to buy drugs, refused to pay him and needed money for her drug addiction. In Point V, Defendant contends the trial court abused its discretion when excluding Victim's testimony that Mother used drugs almost daily and

13

could no longer care for Victim. As noted under Points I and II, the standard of review in addressing the exclusion of evidence at trial is for abuse of discretion. *Ellis*, 512 S.W.3d at 825.

**Analysis**

At trial, Defendant made an offer of proof with Victim, who testified Mother used drugs daily but was not "doing them" at the time of the incident. Victim further stated Mother did not owe Defendant any money. He testified he lived with his grandmother as Mother was too sick from drugs to take care of him. Additionally, Defendant made another offer of proof by testifying Mother used drugs daily, she obtained drugs from Defendant, she owed him $80 for drugs and he continued to provide her drugs despite the fact that she was not paying him. When denying Defendant's request to present this evidence to the jury, the court found there was no evidence that Mother coached Victim and that Mother's drug use was unconnected to Victim's allegations.

To be admissible, Defendant must establish evidence is both logically and legally relevant. *Taylor*, 466 S.W.3d at 528. The evidence of Mother's drug use does not pass the test for logical relevance regarding Victim's motivation to fabricate. Defendant contends Victim may have a motive to fabricate the allegation so he can stay with his grandmother and avoid returning to a life with Mother who regularly abuses drugs. However, Defendant's offer of proof fails to show anything more than a remote connection between Mother's drug use and Victim's disclosure. The evidence in the record does not suggest Victim had any reason to believe fabricating an allegation against Defendant would enable him to get away from Mother and live with his grandmother. As observed by the learned trial court, the record is bereft of any evidence Mother coached Victim to fabricate as Victim indicated that he was unaware Mother owed Defendant money. Further, Victim did not indicate any awareness of the alleged robbery. Again,

14

Defendant relies on *State v. Hedrick* and argues the court should allow him wide latitude to explain what may have influenced Victim to fabricate. Again, *Hedrick* is distinguishable because here there was not "considerable evidence" supporting the inference that Victim was influenced to fabricate an allegation.

Defendant further proposes Mother's drug use and debt bears on his credibility as to his robbery allegation and corroborates his testimony. Even if the testimony could be construed to meet the low-level test for logical relevance, it would still fail the test for legal relevance. "Evidence is legally relevant when the probative value of the evidence outweighs 'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Taylor,* 466 S.W.3d at 528. The balancing of the probative value and prejudicial effect of evidence rests within the sound discretion of the trial court, which is in the best position to make a determination. *See Williams*, 922 S.W.2d at 852; *Lloyd,* 205 S.W.3d at 902. Here, the trial court was entitled to weigh the risk of unfair prejudice and the possibility of misleading or confusing the jury about Mother's drug use and failure to care for her son against any minimal corroborative value of the testimony. Accordingly, on this record, we cannot say the trial court abused its discretion in refusing the admission of such evidence. Moreover, Defendant was not prejudiced by the exclusion of the testimony. As noted by the trial court, Defendant was permitted to testify regarding the details of the robbery he alleges took place. Points IV and V are denied.

## C. Point III

In Point III, Defendant argues the trial court abused its discretion in excluding argument Victim was coached by Mother to make up allegations against Defendant. Defendant maintains

his testimony about the robbery made it more likely Mother coached Victim to fabricate allegations of sexual assault against Defendant.

**Analysis**

Prior to trial, the State asked the trial court to clarify its *in limine* ruling that Defendant could not make any argument Mother coached Victim. The court stated:

> There is no factual basis, there is no good faith basis to argue, based upon everything that the Court knows right now, that the child was coached. The child was deposed, that question was not asked of the child. There has been absolutely no evidence, other than a giant leap of inference, that the mother coached this child in any way.

The trial court barred defense counsel from arguing Victim had been coached by Mother. During closing argument, defense counsel recounted Defendant's testimony that he was robbed by Mother and Ford at gunpoint and 911 was called. Then, defense counsel noted "the suspicious timing of all of this," observing there had been no allegations against Defendant until the alleged robbery. The State objected pursuant to the trial court's motion *in limine* ruling. Defense counsel indicated he did not plan to violate the court's order, but continued his closing argument, stating: "I find the timing of all of this suspicious. Now we don't know what [Victim's] motivations were that night. Or what his mom's motivations were that night." The State immediately objected, and the trial court sustained the State's objection.

Defendant argues the trial court unreasonably limited his closing argument. Specifically, Defendant claims the court excluded argument supported by the evidence and essential to his defense. Review of the trial court's rulings during closing argument is for abuse of discretion. *State v. Kinder*, 942 S.W.2d 313, 329 (Mo. banc 1996). "A trial court maintains broad discretion in the control of closing arguments." *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003). "Although courts are to be careful to refrain from unduly restricting closing arguments, they have the power to confine the arguments to issues raised by the pleadings and the evidence."

*State v. Barton*, 936 S.W.2d 781, 783 (Mo. banc 1996). "A party may argue inferences justified by the evidence, but not inferences unsupported by the facts." *Id.* "An argument does not require reversal unless it amounts to prejudicial error." *Edwards*, 116 S.W.3d at 537.

Here, the central question is whether the inference Mother coached Victim to fabricate allegations against Defendant to cover up her robbery is supported by the facts of this case. The trial court concluded this inference would be a "giant leap" considering the factual circumstances. As noted under previous points, the record does not reflect Mother coached Victim. Also, the evidence does not support that Victim was even aware of the alleged robbery or that Mother owed Defendant money. It was within the trial court's discretionary power to confine Defendant's closing argument to inferences justified by the evidence and enforce its rulings.[5] Considering Defendant did not offer evidence of record allowing the jury to reasonably infer Victim was coached to fabricate allegations against Defendant, the trial court did not abuse its discretion when limiting Defendant's closing argument.

Further, Defendant relies on *State v. Barton*, 936 S.W.2d 781, 785 (Mo. banc. 1996), but the court finds this case distinguishable from the circumstances here. In *Barton*, the defendant sought to argue that the victim would have been alive during a crucial period based upon times stated by various witnesses. *Id*. at 783. Further, he maintained this evidence supported his defense theory. *Id*. at 783. The State objected that the inferred fact was impossible from the evidence and the trial court sustained it, precluding such argument. *Id*. On appeal, the Supreme

---

[5] The trial court was patient and professional when responding to an obstreperous defense counsel bent on challenging the court and its rulings. At a sidebar during closing argument, the court reminded and cautioned defense counsel about the existing, often-discussed *motion in limine*. Despite this, defense counsel returned to his argument and immediately questioned mother's motivations. After the court sustained the State's objection, defense counsel continued with arguments triggering four additional objections from the State that were all sustained by the court. After sustaining two of the four different objections, the court was forced to further instruct the jury to disregard defense counsel's statement that Jewell Ford fled the scene or correct defense counsel's assertion by stating that "there is no evidence that Mr. Ford fled the scene."

17

Court of Missouri decided the defendant's inference regarding the crucial time period was not impossible because the transcript supported the facts that were the premise for the inference. *Id.* at 785. Here, however, the trial transcript lacks the evidentiary support for the inference as found in *Barton*. Point III is denied.

### D.  Point VI

In Point VI, Defendant argues the trial court plainly erred in allowing the State to contend in its closing argument that Victim did not have a motive to fabricate allegations about Defendant. Defendant concedes his counsel did not object to the State's argument and therefore asks the Court to review for plain error.

### **Standard of Review**

The standard of review for alleged error in closing argument depends upon whether defense counsel objects. *State v. Walter*, 479 S.W.3d 118, 122 (Mo. banc 2016). Claims that are not preserved may be reviewed at the discretion of this court for plain error. Rule 30.20. Rule 30.20 provides that plain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice. *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014).

"In applying plain error review, this Court frequently uses a two-step inquiry." *Id.* "First, the Court must determine whether the claimed error is, in fact, 'plain error[ ] affecting substantial rights.'" *Id.* (citing Rule 30.20). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." *Id.* "An error is plain if it is 'evident, obvious, and clear.'" *Id.* (citing *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)). Second, if the court

finds plain error affecting substantial rights, then the court determines whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.*

"[S]tatements made during closing argument rarely constitute plain error." *State v. Wright*, 216 S.W.3d 196, 201 (Mo. App. S.D. 2007). "Without an objection by counsel, a trial court's options are narrowed to uninvited interference with summation, which may itself constitute error." *Id.* For the defendant to carry his burden of showing plain error he must prove that the prosecutor's statement had a decisive effect on the jury's verdict. *Id.* "The prosecutor's statement is decisive when there is a reasonable probability that the verdict would have been different had the error not been committed." *Id.*

### Analysis

After contending there was sufficient evidence to find Defendant guilty of both counts of statutory sodomy, the State asserted in closing argument that Victim did not benefit by testifying about what happened to him. Specifically, the State made the following remarks: (1) "Why on earth would a ten-year-old child come in here, tell a complete room of strangers about these humiliating things that happened to him?" (2) "There is absolutely no benefit for [Victim] to come in here and talk about these things." (3) "[Victim] has absolutely no motive to make this up. At all. And you have heard no evidence to suggest that he did."

Defendant contends it constituted plain error for the court to permit the State to make these positive misrepresentations to the jury that there was not any evidence of Victim's motive to lie when relevant testimony of Victim's motive to fabricate—Mother's physical abuse and drug habit—had been excluded. Defendant contends the trial court plainly erred when it allowed the State to benefit from the exclusion of that evidence in closing argument to the detriment of Defendant.

19

This court finds the trial court did not plainly err in failing to *sua sponte* interrupt the prosecutor's closing argument. In order for Defendant's argument to succeed, the excluded evidence must be relevant to Victim's motive to fabricate. In excluding testimony regarding mother's physical abuse of Victim and her drug habit, the trial court found this evidence did not support the inference Victim was motivated to lie. As previously discussed in Points I, II, IV, and V, this court finds the trial court did not abuse its discretion when excluding the testimony regarding Mother's physical abuse of Victim and her drug use. Defendant's offers of proof failed to demonstrate the relevancy of the proposed testimony. The excluded evidence did not support a reasonable inference Victim was coached or motivated to lie about Defendant's sexual abuse and did not meet the test for logical relevance required for admissibility. Thus, the State could properly argue that Victim did not have a motive to fabricate based upon the evidence. The court finds no plain error by the trial court when failing to *sua sponte* intervene during closing argument. Point VI is denied.

### E. Point VII

In Point VII, Defendant maintains the trial court plainly erred in allowing the State to argue in its rebuttal there was no evidence to support Defendant's allegation he was robbed by Mother and her boyfriend other than Defendant's testimony. Defendant acknowledges his counsel failed to object to the State's argument and asks the court to review for plain error. The court adopts the standard for plain error review articulated above when addressing Point VI.

### Analysis

In its rebuttal, the State commented, "There has been absolutely no evidence at all presented to support the defendant's theory that some robbery occurred." Later, the state added,

"You have heard absolutely no evidence to support this theory at all, other than the word of the defendant. Nothing. You are to be guided by the evidence in this trial."

Defendant contends it constituted plain error for the court to allow the State to make positive misrepresentations to the jury in closing argument that there was not any additional evidence Defendant was robbed by Mother. Defendant asserts that the trial court excluded his relevant testimony about Mother using drugs almost daily, owing Defendant money but continuing to buy drugs and needing money for her drug habit.

As discussed in Points IV and V, this court finds the trial court did not abuse its discretion when excluding testimony about Mother's drug habit because this evidence does not meet the test for logical or legal relevance as required for admissibility. Thus, the State did not benefit from the exclusion of *relevant* evidence and did not make a deliberate misrepresentation to the jury. The trial court's failure to *sua sponte* intervene during the State's rebuttal closing argument does not constitute plain error affecting Defendant's substantial rights. Point VII is denied.

### F.   Point VIII

In Point VIII, Defendant argues the trial court abused its discretion by overruling defense counsel's objection and admitting Officer Sims's testimony that when he arrived at Victim's home, he observed Mother and Defendant arguing and overheard Mother state, "she couldn't believe that [Defendant] (had) done that."

#### Standard of Review

"A claim that hearsay was improperly admitted is reviewed for an abuse of the trial court's discretion." *State v. Burrough*s, 627 S.W.3d 69, 78 (Mo. App. E.D. 2021), *transfer denied* (Aug. 31, 2021). "'A trial court has broad discretion to admit or exclude evidence during

21

a criminal trial, and error occurs only when there is a clear abuse of this discretion.'" *Id.* (quoting *State v Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019)). "'[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Forrest*, 183 S.W.3d at 223 (quoting *Gonzales*, 153 S.W.3d at 312). On direct appeal, this Court reviews the trial court's rulings on admission of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 223-24. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. *Id.* at 224.

## **Analysis**

At trial, Officer Sims testified he responded to a call for a possible sexual assault on September 23, 2019. He stated upon his arrival, he observed Mother and Defendant arguing in the street when he heard Mother's statement. Defendant objected based on hearsay. The State argued the statement went to Officer Sims's subsequent conduct. The court overruled Defendant's objection. The State then asked Officer Sims, "As a result of hearing that statement, did you enter the house?" Officer Sims confirmed he entered the house and interviewed Victim in the kitchen.

Defendant argues the trial court abused its discretion by overruling defense counsel's objection and admitting Officer Sims's testimony. Defendant contends Mother's out-of-court statement was hearsay and went beyond what was necessary to explain subsequent police conduct. Defendant argues Mother's statement directly implicated Defendant and there was a substantially less prejudicial way of eliciting evidence to explain why Officer Sims spoke with Victim.

22

The State argues Defendant's objection to Officer Sims's testimony was untimely and urges the Court to review Point VIII for plain error. The State relies on *State v. Blurton*, 484 S.W.3d 758 (Mo. banc. 2016). The *Blurton* Court found "[a]n objection made after a witness gives a responsive answer to an objectionable question is usually not timely." *Id*. at 774. A trial court's ruling on an objection is preserved for appellate review only if the objection was timely or the party timely moved to strike the answer. *Id.* (citing *State v. McFadden*, 369 S.W.3d 727, 740 (Mo. banc 2012)). An objection to testimony must be made at the earliest possible opportunity to allow the trial court to invoke remedial remedies. *Id.* (citing *State v. Borden*, 605 S.W.2d 88, 90 (Mo. banc 1980)). An objection made after a witness gives a responsive answer to an objectionable question is usually not timely. *Id.* Here, after eliciting testimony from Officer Sims that he saw Mother and Defendant arguing, the State asked Officer Sims if he heard anything. He answered in the affirmative, upon which the State asked what was said. He then recounted Mother's statement and defense counsel objected. This court agrees Defendant could have objected earlier when Officer Sims was asked by the State whether he heard anything. However, an exception to the timeliness requirement is recognized where the grounds for the objection become apparent only when the answer is given. *Id*. In these circumstances, the opposing attorney must object to the answer as soon as possible, which Defendant did here. *Id.* The Court concludes Defendant's objection was sufficiently timely and will review the alleged error for abuse of discretion.

Hearsay statements are out-of-court statements used to prove the truth of the matter asserted, which, as a rule, are inadmissible. *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998). An out-of-court statement offered not for the truth of the matter asserted, but to explain subsequent police conduct is not hearsay and is, therefore, admissible, assuming it is relevant.

23

*State v. Douglas*, 131 S.W.3d 818, 824 (Mo. App. W.D. 2004). "'It is well established that such testimony is admissible to explain the officer's conduct, supplying relevant background and continuity to the action.'" *State v. Allison*, 326 S.W.3d 81, 90 (Mo. App. W.D. 2010) (quoting *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981)). However, when an out-of-court statement goes beyond what is necessary to explain subsequent police conduct, then it becomes hearsay. *Douglas*, 131 S.W.3d at 824.

Here, the trial court properly admitted Officer Sims's testimony regarding Mother's statement as explaining Officer Sims's subsequent conduct and not for the truth of whether Defendant committed the underlying crimes. The testimony provided context to Officer Sims's conduct in responding to the 911 call, entering the house and contacting Victim. Further, the Court cannot conclude Officer Sims's testimony—that Mother stated, "she couldn't believe [Defendant] (had) done that"—went beyond what was necessary to explain subsequent police conduct. Here, the overheard statement is facially vague and does not directly connect Defendant to the sexual assault of Victim. *Cf. State v. Hoover*, 220 S.W.3d 395, 407-08 (Mo. App. E.D. 2007) (police officer testimony on out-of-court statements was not admissible as the statements directly connected the defendant to the crime); *State v. Shigemura*, 680 S.W.2d 256, 257 (Mo. App. E.D. 1984). Accordingly, the court did not abuse its discretion in overruling Defendant's objection to Officer Sims's testimony. Point VIII is denied.

### G.   Point IX

In Point IX, Defendant argues the trial court abused its discretion when allowing the State to argue in closing that the jury should consider a hearsay statement for its truth. Specifically, Defendant contends although Officer Sims's testimony about Mother's statement was admitted

24

to show subsequent police conduct at trial, the State asked the jury to consider the statement for the truth of the matter asserted during the rebuttal of closing argument.

## Standard of Review

Review of the trial court's rulings during closing argument is for abuse of discretion. *Kinder*, 942 S.W.2d at 329. "A trial court maintains broad discretion in the control of closing arguments." *Edwards*, 116 S.W.3d at 537. A prosecutor is entitled to substantial latitude in closing argument and may suggest reasonable inferences for the jury to draw from the evidence. *State v. Buchli*, 152 S.W.3d 289, 304 (Mo. App. W.D. 2004) "An argument does not require reversal unless it amounts to prejudicial error." *Edwards*, 116 S.W.3d at 537. Closing arguments "must be interpreted with the entire record rather than in isolation." *State v. Graham*, 916 S.W.2d 434, 436 (Mo. App. E.D. 1996).

## Analysis

As noted in Point VIII, Officer Sims stated he heard Mother say, "she couldn't believe that [Defendant] done [sic] that." The trial court overruled Defendant's objection to this testimony as hearsay, finding the statement went to Officer Sims's subsequent conduct. In Defendant's closing argument, defense counsel recounted Defendant's testimony that he was robbed and argued the timing of Victim's allegations against Defendant were "suspicious" and questioned Mother's and Victim's motivations. Then in rebuttal, the prosecutor stated:

> You just heard defense counsel make a lot of statements, refer to a lot of things, I want to make it entirely clear to you. Statements by the attorneys are not evidence. Okay? Just because we say things doesn't necessarily make it true.
>
> . . .
>
> You have heard absolutely no evidence to support this theory at all, other than the word of the defendant. Nothing. You are to be guided by the evidence in this trial.

25

Also, even assuming that this thing occurred, I don't know how that has anything to do with what you've heard here about this case here today. The theory about this robbery doesn't really make sense at all. You heard from the officer that responded right away. He testified that the defendant and the victim's mom were in the street, and she was yelling at him, I can't believe you did those things to him. You know what that's evidence to support? What just happened there.

Defense counsel objected and the Court overruled the objection. Then the prosecutor stated:

"That was testified to by the officer and you can absolutely consider it."

Defendant argues the trial court erred overruling his objection and allowing the State to argue Officer Sims's statement should be considered for its truth. In response, the State claims it was entitled to make a retaliatory argument in rebuttal that Officer Sims's statement could be considered by the jury for the truth of whether or not a robbery took place. The State notes it did not argue the jury should consider the statement for the truth of whether a sexual assault took place.

"'[W]hen complained of remarks come in the rebuttal portion of argument by the State, the trial court may consider whether the comments were invited' in that 'the State may go further by way of retaliation in answering the argument of the defendant than would be normally allowed.'" *State v. Hall*, 319 S.W.3d 519, 523–24 (Mo. App. S.D. 2010) (quoting *State v. Pratt*, 858 S.W.2d 291, 292 (Mo. App. E.D. 1993) (internal brackets omitted)). The State "has considerable leeway to make retaliatory arguments at closing" and it "may retaliate to an issue raised by the defense even if [the] comment would be improper." *State v. Sanchez*, 186 S.W.3d 260, 265 (Mo. banc 2006).

The Court agrees the State should be afforded considerable leeway in rebuttal, especially as defense counsel questioned the propriety of Mother's and Victim's motivations before the jury, despite the trial court's ruling *in limine* precluding argument Victim was coached. The State was entitled to argue all reasonable inferences from the evidence. In rebuttal, the prosecutor did

26

not contend Sims's testimony should be considered for the truth of the matter—that Defendant sexually assaulted Victim, but instead urged the jury to consider it in the context of whether a robbery took place. In addition, the Court notes the trial court instructed the jury that the arguments of the attorneys were not evidence and the State reminded the jury of this instruction when commencing its rebuttal. The trial court's overruling of Defendant's objection to the State's argument was not clearly against the logic of the circumstances or so unreasonable as to indicate a lack of careful consideration." *See Zink*, 181 S.W.3d at 73.

Further, Defendant mistakenly relies on *State v. Burroughs*, 627 S.W.3d 69, 80 (Mo. App. E.D. 2021), where this Court attributed error to the trial court after refusing to instruct the jury to consider only the hearsay statement for subsequent conduct, not for the truth of the matter. *Burroughs* is distinguishable from the present matter because Burroughs's defense attorney requested the court instruct the jury that the hearsay statement was offered for the limited purpose of explaining the officer's subsequent conduct when directing the victim to the hospital, not for the truth of whether defendant raped the victim. *Id*. at 80. However, the *Burroughs* trial court refused to proffer this legal guidance. *Id*. at 80. Here, defense counsel objected to the State referring to the hearsay statement when it was used to challenge the credibility about the robbery argument raised by defense counsel, not for the truth of whether Defendant sexually assaulted Victim.

Moreover, on direct appeal, this Court reviews the trial court's rulings on admission of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Forrest*, 183 S.W.3d at 223-224. Examining the prosecutor's complained-of comments in the context of the entire record, this court does not find a reasonable probability that allowing the prosecutor's argument affected the outcome of the

trial. *Id.* Accordingly, the trial court did not abuse its discretion in allowing the argument. Point IX is denied.

### H. Point X

In Point X, Defendant contends the trial court erred in denying his motion for new trial, because the cumulative effect of the errors in Points I-VII resulted in a miscarriage of justice, essentially prohibiting Defendant from effectively arguing his defense. Citing *Koontz v. Ferber*, 870 S.W.2d 885, 894 (Mo. App. W.D. 1993), Defendant argues: "An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." However, *Koontz* also specifies that "relief will not be granted for cumulative error when there is no showing that prejudice resulted from any rulings of the trial court." *Id.* In this case, Defendant has not shown either error or prejudice resulting from any rulings on the part of the trial court in Points I-VII. Point X is denied.

### IV. CONCLUSION

The judgment of the trial court is affirmed.

_____
Thomas C. Clark II, J.

Lisa P. Page, P. J., and
Kurt S. Odenwald, J., concur